UNITED STATES of America, Plaintiff,

v.

SEAFOAM II, with its fishing gear, furniture, appurtenances, stores, fish and cargo, and Barge Sea Pac I, with its fishing gear, furniture, appurtenances, stores, fish and cargo, Defendants.

UNITED STATES of America, Plaintiff,

v.

RIO SAN LORENZO, with its fishing gear, furniture, appurtenances, stores, fish and cargo, and Barge Sea Pac II, with its fishing gear, furniture, appurtenances, stores, fish and cargo, Defendants.

Nos. A81–302, A81–303.

United States District Court,
D. Alaska.

Jan. 4, 1982.

Michael H. Woodell, Anchorage, Alaska, for defendants.

Michael Spaan, U. S. Atty. for Alaska, Anchorage, Alaska, for plaintiffs.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on cross-motions for summary judgment. Two cases have been consolidated in this proceeding. They both arise in admiralty and concern enforcement of the Fishery Conservation and Management Act of 1976 (FCMA). *See generally* 16 U.S.C. §§ 1801–

82 (1976). Jurisdiction therefore exists based on 16 U.S.C. § 1861(d) and 28 U.S.C. § 1333 (1976).

## I. FACTS

The case involves a suit for condemnation and forfeiture of defendant vessels for alleged violations of the Fishery Conservation and Management Act. The FCMA was a Congressional response to the perceived need to conserve and manage valuable fishery resources off the coast of the United States.

The Act significantly affected both domestic and foreign fishing in American waters. United States jurisdiction was increased to 200 miles by the establishment of a fishery conservation zone 197 miles in width measured from the seaward boundary of the territorial waters. 16 U.S.C. § 1811 (1976). Exclusive authority for fishery management within the zone, and even beyond in limited circumstances, was given to the federal government. *Id.* § 1812. Stated legislative purposes of the FCMA reflect Congress' desire to conserve and manage fishery resources as well as promote domestic utilization of same. *Id.* § 1801(b). Consistent with these goals, foreign fishing activities are subjected to comprehensive regulation. Foreign fishing is only allowed if an international fishery agreement (treaty) existed at the time of the Act or becomes effective between the United States and a foreign nation subsequent to passage of the Act. *Id.* § 1821. In such an event, vessels engaged in foreign fishing are still required to have a valid permit issued according to the procedure set forth in the FCMA. *Id.* §§ 1821(a)(3), 1824. Regulations promulgated under the Act also require, among other things, that foreign fishing vessels not engage in fishing within the boundaries of any state. 50 C.F.R. § 611.7(b)(1) (1980).

Enforcement of the Act on the water itself is delegated to the United States Coast Guard in conjunction with the National Marine Fisheries Service. Authorized personnel are given broad powers to randomly board and search those fishing vessels subject to the provisions of the Act, and seizure of a vessel along with its contents is sanctioned in proper instances. 16 U.S.C. § 1861 (1976). In addition to the civil and criminal penalties set forth, the Act provides that fishing vessels are subject to forfeiture to the United States if used in the commission of certain acts prohibited by the FCMA. *Id.* § 1860(a).

This case concerns the use of Canadian vessels within the fishery conservation zone and territorial sea off the coast of Alaska. The four vessels at issue are all registered in Canada and owned by Canadian corporations. The SEAFOAM II and RIO SAN LORENZO are tugs. SEAPAC I and SEAPAC II are their respective processing barges. The tugs were time chartered and the barges were bareboat chartered to Seapac Fisheries, Inc., a Washington corporation wholly owned by Canadian citizens. The record further reveals that the individuals in a Canadian corporation owning both barges are also stockholders in Seapac Fisheries, Inc.

All vessels passed through United States Customs Service at the Port of Ketchikan in April 1981. At that time, the vessels were declared to be of Canadian nationality. In addition to proceeding through customs, the production manager for Seapac Fisheries, Inc. allegedly qualified the corporation's operation in Alaska herring fisheries for 1981. Licenses for the four vessels were purchased from the Alaska Department of Fish and Game, and fish tickets for purchasing herring from fishermen were acquired from the Department of Commercial Fisheries. Appropriate bonds were filed, and business licenses from the Department of Revenue were also obtained. In complying with the foregoing registration procedures, individuals acting on behalf of defendant vessels believed they had fully acquired the right to catch and process herring in Alaskan waters.

The vessels subsequently commenced operations in the waters off southwest Alaska. At all relevant times the vessels were either within the three-mile territorial sea coterminous with the Alaska coast, or within the

fishery conservation zone. On May 27, 1981, a special agent of the National Marine Fisheries Service observed the vessels receiving herring in the territorial waters within Stephens Pass. The agent boarded the vessels the next day for inspection as authorized by the FCMA. *See* 16 U.S.C. § 1861(b) (1976). After examining the records on board, he ascertained that defendant vessels were catching herring as well as buying herring from American fishing vessels. All fish were then processed on defendant barges.

The vessels and their contents were seized on May 30, 1981 pursuant to authority granted under the FCMA. *See id.* § 1861(b)(1)(C), (D) and (E). Among other things, § 1861 allows authorized officers to seize a vessel along with its fish and any other relevant evidence that reasonably appears to have been used in the violation of any provision of the FCMA. The alleged violations in this case include: catching and processing of fish within the territorial sea of Alaska by foreign vessels; catching and processing of fish by foreign fishing vessels inside the fishery conservation zone without FCMA permits; conducting an unauthorized directed fishery for herring and retention of same; failure of vessels to maintain a daily cumulative catch log; and failure of vessels to adequately report their activities to the Coast Guard. Based on these violations, the government sought forfeiture of the SEAFOAM II and SEAPAC I in one suit, and the RIO SAN LORENZO and SEAPAC II in another.

The pivotal issue in this case is a question of law regarding whether any defendant vessels may be characterized as "vessels of the United States" for purposes of the FCMA. If defendants are correct in their assertion that the vessels were meant to be included within the statutory definition provided in the Act, then they had no obligation to acquire FCMA permits or comply with numerous other restrictions on foreign fishing. They would therefore have a valid defense to the violations alleged. Conversely, if the government is correct in asserting defendant vessels were not "vessels of the United States", it follows that they were engaged in foreign fishing and processing, and subject to restrictions on such activity as set forth in the FCMA.

## II. THE SUMMARY JUDGMENT MOTIONS

At this juncture, the court is asked to determine the parties' cross-motions for summary judgment. Both parties seek a ruling on whether defendant vessels are "vessels of the United States" for purposes of the FCMA. Plaintiff's motion is limited in that it only seeks summary judgment on Count I of the complaint. That count alleges defendants were in violation of implementing regulation 50 C.F.R. § 611.7(b)(1) (1980).

*A. Documented Under the Laws of the United States*

The FCMA defines a "vessel of the United States" to be "any vessel documented under the laws of the United States or registered under the laws of any State." 16 U.S.C. § 1802(27) (Supp. III 1979). Hence, there are two ways in which a vessel may acquire the desired status.

Under the first alternative, the word "documented" is not specifically defined by the statute. Legislative history also does not elaborate on the meaning of this term. Previously existing United States maritime laws, however, give the word a broad meaning. For example, the Ship Mortgage Act of 1920 defines documented as "registered or enrolled or licensed under the laws of the United States." 46 U.S.C. § 911(2) (1976). This is consistent with procedures set forth in the general shipping laws. *See id.* §§ 11, 17, 251(a) and 252. A federal regulation promulgated pursuant to that title also defines documented to mean "registered, enrolled and licensed, or licensed under the laws of the United States." 46 C.F.R. § 66.03–9 (1980). A Senate report accompanying an amendment to the FCMA recognizes that the Act and general shipping laws are interrelated. *See* S.Rep.No.96–72, 96th Cong., 1st Sess. 1, 4–6 (1979). The word documented should therefore be given the same broad meaning attributed to it in prior federal legislation.

■ Laws relating to documentation of vessels are currently administered and enforced by the United States Coast Guard. *See* 46 C.F.R. § 66.01–3 (1980). The record in this case reveals that the Coast Guard has not documented any defendant vessels under United States laws. Accordingly, the first alternative in the FCMA to determine a "vessel of the United States" does not afford defendant vessels the desired status.

*B. Registered Under the Laws of Any State*

The second possibility in 16 U.S.C. § 1802(27) provides "vessel of the United States" means any vessel "registered under the laws of any State." There is disagreement between the parties concerning whether defendants' compliance with Alaska registration requirements was the type of proceeding contemplated by Congress in this clause. Defendants maintain the latter clause of § 1802(27) was meant to include this possibility, whereas plaintiff contends the provision only addresses those smaller vessels that are not required to be documented under United States laws.

*1. Legislative History*

No case law exists interpreting this aspect of § 1802(27). Legislative history addressing this subsection is also nonexistent; however, reference to a prior Act of Congress and commentary on another definition in the FCMA are helpful.

■ The Bartlett Act was the statutory predecessor of the FCMA. *See generally* Pub.L.No.88–308, 78 Stat. 194 (1964). An express purpose of this Act was to prohibit fishing within the territorial waters of the United States by vessels other than United States vessels. *See id.* § 1. Legislative history of the statute substantiates this intent. *See* H.R.Rep.No.1356, 88th Cong., 2nd Sess., *reprinted in* [1964] U.S.Code Cong. & Ad.News 2183, 2183–87. It also made clear that a foreign-flag vessel could not be considered a vessel of the United States. *See* Report of the Secretary of Interior to the House Committee on Merchant Marine and Fisheries, *reprinted in* [1964] U.S.Code

Cong. & Ad.News 2188, 2188. This intent is important because the FCMA was meant to repeal the Bartlett Act and incorporate its provisions. *See* Joint Explanatory Statement of the Committee of Conference, Section 307, *reprinted in* A Legislative History of the Fishery Conservation and Management Act of 1976, at 92 (Comm. Print 1976) [hereinafter Committee Print]. Hence, it is evident that although Congress did not elaborate on the meaning of "vessel of the United States" in the FCMA, the definition was not intended to include a foreign flag vessel.

■ In addition to the help provided by the nexus between the FCMA and the Bartlett Act, the second alternative in 16 U.S.C. § 1802(27) also derives meaning from legislative history regarding another definitional subsection in § 1802. A report by the Senate Commerce Committee (concerning the definition of foreign fishing at 16 U.S.C. § 1802(12)) states as follows: "'Foreign fishing' means fishing by a vessel other than a vessel of the United States. The determinant is the flag of the vessel. If the vessel flies the flag of, *i.e.*, is registered in, a foreign nation, it is included in the term." S.Rep.No.94–416, 94th Cong., 1st Sess. 20 (1975), *reprinted in* Committee Print, *supra*, at 676. As the first sentence of this passage suggests, foreign fishing and fishing by a vessel of the United States are mutually exclusive. In this case, all four defendant vessels are Canadian flag vessels. They are all of Canadian registry and defendants concede the characterization of their nationality. Tracking the intent of the Senate Commerce Committee, it follows that defendant vessels are not vessels of the United States for purposes of the FCMA. In addition to the preceding consideration, a quick perusal of the stated purposes for the FCMA makes inconceivable the notion that Congress would allow virtually any foreign vessel to attain the desirable status of § 1802(27) by registering with a state. Such a possibility would emasculate the goals of the Act. *See* 16 U.S.C. § 1801(b) (1976).

### 2. 50 C.F.R. § 611.2(gg)

Defendants also are not within the scope of § 1802(27) in light of a regulation promulgated by the Secretary of Commerce pursuant to the Act. This regulation defines "vessel of United States" as either a vessel documented or numbered by the Coast Guard under United States law, or a vessel, *under five net tons*, which is registered under the laws of any state. 50 C.F.R. § 611.2(gg) (1980). The regulation further clarifies the intent of Congress concerning the meaning of the second alternative in § 1802(27).

The under five tons criterion is a reference to certain vessels registered pursuant to the Federal Boat Safety Act of 1971. *See* 46 U.S.C. §§ 1451–89 (1976). A provision of that Act states: "An *undocumented vessel* equipped with propulsion machinery of any type shall have a number issued by the proper issuing authority in the State in which the vessel is principally used." *Id.* § 1466 (emphasis added). "Undocumented vessel" is further defined as "a vessel which does not have and is not required to have a valid marine document as a vessel of the United States." Id. § 1452(3). Pursuant to federal documentation requirements, a fishing vessel over twenty net tons must be either registered, or enrolled and licensed. Vessels of five net tons or more but less than twenty net tons have an option also and may be licensed or registered. *See* 46 C.F.R. § 67.01–1(a) (1980). An explicit exemption from federal documentation requirements is given to vessels weighing less than five net tons. *Id.* § 67.01–11. Consequently, under the Federal Boat Safety Act, vessels under five net tons are specifically provided for. Such vessels need not be documented under United States law, but they are required to have a number issued by the appropriate state. Based on 50 C.F.R. § 611.2(gg), it appears Congress was referring to these vessels in the latter clause of 16 U.S.C. § 1802(27).

■ In essence, the words "registered under the laws of any State" as used in 16 U.S.C. § 1802(27) are given further meaning by 50 C.F.R. § 611.2(gg). This implementing regulation provides that only vessels under five net tons which are registered (numbered) under the laws of a state may acquire the desired status of a vessel of the United States for purposes of the FCMA. None of the four vessels listed as party defendants in this case weigh less than five net tons. They therefore do not qualify as vessels of the United States based on the state registration procedure mentioned in 16 U.S.C. § 1802(27).

### 3. Jurisdiction to Challenge the Regulation

Anticipating the adverse effect the weight restriction in 50 C.F.R. § 611.2(gg) would have on them, defendants have challenged the validity of that regulation. They contend the regulation goes beyond statutory parameters, thus infringing on state jurisdiction. The court initially notes that regardless of the validity of this regulation, Congress has made clear that it did not intend to allow foreign flag vessels to qualify as vessels of the United States for purposes of the FCMA. Before scrutinizing the regulation, however, it is first necessary to resolve whether the court has jurisdiction to hear defendants' challenge.

■ The FCMA provides that regulations promulgated by the Secretary of Commerce pursuant to the Act are subject to judicial review if a petition for review is filed within thirty days after the date on which the regulations are promulgated. 16 U.S.C. § 1855(d) (1976). In this case the regulation in question was promulgated over three years prior to defendants' challenge. Nonetheless, defendants are not precluded from challenging the regulation. The time limitation in § 1855(d) for challenging regulations clearly applies to direct challenges of the regulations. *See National Food Processors Association v. Klutznick,* 507 F.Supp. 76, 77–78 (D. D. C. 1981); *Hanson v. Klutznick,* 506 F.Supp. 582, 585–86 (D. Alaska 1981). It is not so clear, however, whether the limitation applies to a collateral attack on a regulation as a defense in an enforcement proceeding. *See generally* Comment, *Judicial Review of Fishery Man-*

*agement Regulations Under the Fishery Conservation and Management Act of 1976,* 52 Wash.L.Rev. 599, 606–07 (1977). Such is the situation in this case.

■■ The Supreme Court has held that judicial review of administrative action is the rule rather than the exception. *See Barlow v. Collins,* 397 U.S. 159, 166, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970). *See also Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 156–57, 90 S.Ct. 827, 831, 25 L.Ed.2d 184 (1970). Congress' philosophy regarding this issue is consistent with the Court. The Administrative Procedure Act (APA) in effect establishes a presumption of judicial review of agency action which may be rebutted in limited circumstances. *See* 5 U.S.C. §§ 701–02 (1976). The FCMA provides for judicial review of regulations to the extent authorized by, and in accordance with the APA. 16 U.S.C. § 1855(d) (1976). Hence, the policy favoring judicial review applies to the FCMA.

■ It is clear that Congress chose not to preclude judicial review of an FCMA regulation when a collateral attack on a regulation is used as a defense in an enforcement proceeding. There are no express words in 16 U.S.C. § 1855(d) that could be interpreted as an absolute bar to a challenge of a regulation in an enforcement proceeding. In contrast, Congress has expressly precluded such relief in other legislation. Provisions in both the Federal Water Pollution Control Act and the Clean Air Act deny judicial review of implementing regulations in civil or criminal proceedings for enforcement. *See* 33 U.S.C. § 1369(b)(2) (1976); 42 U.S.C. § 7607(b)(2) (Supp. III 1979). For the preceding reasons this court holds that jurisdiction exists for defendants to challenge regulation 50 C.F.R. § 611.2(gg).

■ In challenging the regulation, defendants assert the provision is contrary to the will of the legislature. *See generally Yakus v. United States,* 321 U.S. 414, 425, 64 S.Ct. 660, 667, 88 L.Ed. 834 (1944). The court disagrees. As previously discussed, vessels of five net tons or more are required to be documented under United States laws in order to be within the first alternative of 16 U.S.C. § 1802(27). The regulation at issue addresses the second alternative in this subsection by merely making it possible for the remaining undocumented vessels to be considered vessels of the United States. The court once again notes that legislative history clarifying another aspect of the same statutory provision reveals Congress was well aware of and intended that the FCMA and the general shipping laws be read together. *See* S.Rep.No.96–72, 96th Cong., 1st Sess. 1, 4–6 (1979). Promulgation of 50 C.F.R. § 611.2(gg) is therefore consistent with the will of Congress over the years in legislation regulating fishing in American waters.

■ Defendants also challenge the regulation by asserting it renders state jurisdiction meaningless and is contrary to 16 U.S.C. § 1856. That section provides, with limited exceptions, that nothing in the Act shall be construed as extending or diminishing the jurisdiction of any state within its boundaries. It further allows states to retain jurisdiction to regulate fishing within the three-mile territorial sea and even beyond it if the vessel at issue is registered under the laws of the state. In both of these situations, however, state jurisdiction is concurrent with federal jurisdiction. A similar relationship existed prior to enactment of the FCMA. The definition in 16 U.S.C. § 1802(27), as reflected in 50 C.F.R. § 611.2(gg), has meaning only in the federal context relating to the FCMA. The regulation does not preclude states from regulating fishing and related activities in accordance with their own laws as they have in the past. For this reason, it cannot be said that 50 C.F.R. § 611.2(gg) infringes on state jurisdiction.

Since none of defendant barges or tugs are "vessels of the United States" within the meaning of 16 U.S.C. § 1802(27), the vessels are subject to the restrictions placed on foreign vessels by the FCMA and its implementing regulations. 50 C.F.R. § 611.7(b)(1) provides that foreign vessels may not engage in fishing within the

boundaries of a state. As mentioned earlier in this memorandum, all four defendant vessels were sighted and seized within the territorial waters of Stephens Pass. The word "fishing" as defined by 16 U.S.C. § 1802(10) and 50 C.F.R. § 611.2(r) is given a broad meaning. Both provisions cite to operations at sea in support of or in preparation for harvesting of fish. Processing of fish is such an operation. *See* 50 C.F.R. § 611.2(r)(3)(i) (1980). Since defendant barges were processing herring, it follows that they were in violation of the FCMA. The tugs also violated the Act in light of their role in transporting fish products. *See id.* § 611.2(r)(3)(ii).

Accordingly, IT IS SO ORDERED:

1) THAT defendants' motion for summary judgment is denied.

2) THAT plaintiff's motion for summary judgment is granted.

3) THAT plaintiff's counsel may prepare an appropriate judgment form.