UNITED STATES of America, Plaintiff,

v.

MYS PROKOFYEVA, Defendant,

V/O Sovrybflot, as agent for Korsakov Dept. of Ocean Fisheries, Claimant.

Civ. No. A80–186.

United States District Court, D. Alaska.

April 21, 1982.

---

Michael Spaan, U. S. Atty., Gregory Taylor, Asst. U. S. Atty., Anchorage, Alaska, for United States.

Joan Travostino, Graham & James, Anchorage, Alaska, for claimant.

## MEMORANDUM AND ORDER

VON DER HEYDT, Chief Judge.

THIS CAUSE comes before the court on claimant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment. The case arises in admiralty and concerns enforcement of the Fishery Conservation and Management Act of 1976 (FCMA). 16 U.S.C. §§ 1801–82 (1976). Jurisdiction therefore exists based on 16 U.S.C. § 1861(d) and 28 U.S.C. § 1333 (1976).

## I. FACTS

The Government in this case is suing for condemnation and forfeiture of defendant vessel for alleged violations of the Fishery Conservation and Management Act. *See* 16 U.S.C. § 1860(a) (1976). Numerous prior challenges to the FCMA in this court have laid out the essential provisions of the Act.[1] The applicable provision in this case is 16 U.S.C. § 1857 (1976). It provides in relevant part that it is unlawful for any person to violate any regulation issued pursuant to the Act. *Id.* § 1857(1)(A). The regulation at issue in this case is 50 C.F.R. § 611.9 (1980). This section sets forth the requirement of foreign fishing vessels to maintain adequate records of their fishing activities in conformance with regulations for the fishery in which the vessel is engaged.[2]

---

1. *See generally United States v. Seafoam II,* 528 F.Supp. 1133 (D.Alaska 1982); *Hanson v. Klutznik,* 506 F.Supp. 582 (D.Alaska 1981); *United States v. Kaiyo Maru Number 53,* 503 F.Supp. 1075 (D.Alaska 1980); *United States v.* *Tsuda Maru,* 479 F.Supp. 519 (D.Alaska 1979); *United States v. Tsuda Maru,* 470 F.Supp. 1223 (D.Alaska 1979).

2. The regulation provides in relevant part as

It is beyond dispute in this case that defendant vessel was engaged in "foreign fishing" as that term is defined by the Act.[3] On or about May 23, 1980, the MYS PRO-KOFYEVA commenced fishing activities in the fishery conservation zone off the coast of Alaska.[4] On June 7, 1980 United States Coast Guard personnel boarded the vessel for the purpose of inspection as authorized by the FCMA.[5] Subsequent inspection of the vessel's daily cumulative catch log led Coast Guard personnel to conclude that gross discrepancies existed between the records kept and the actual fish on board the vessel.[6] Based on this alleged violation of the FCMA, the Coast Guard seized defendant vessel on June 8, 1980. The Government then instituted this suit for condemnation and forfeiture of the vessel.

## II. THE SUMMARY JUDGMENT MOTIONS

The parties have filed cross-motions for summary judgment. Claimant's motion seeks summary judgment on all of plaintiff's claims against the MYS PROKOFYE-VA.[7] Plaintiff's cross-motion seeks partial summary judgment on Count III of its second amended complaint, which alleges the vessel's daily cumulative catch log misstates the catch for June 7, 1980.

Claimant's memoranda in support of its motion challenge both the FCMA and the

follows:

§ 611.9  Reports and recordkeeping.

(a) The operator of each foreign fishing vessel shall maintain an accurate log of catch and effort information in accordance with the regulations for the fishery in which the vessel is engaged.

(b) Upon each transfer of any fish or fishery product, the operators of both the transferring and receiving vessels shall record in their respective logs:

(1) The date, time, and location (in geographic coordinates) of the transfer;

(2) The weight or number, by species, of all fish transferred; and

(3) The name, nationality, and permit number of the other vessel involved in the transfer.

(c) The operator of each foreign fishing vessel shall record, in a communications log, the Greenwich mean time and content of each notification made under § 611.4.

(d) *Daily cumulative catch log.* (1) All foreign fishing vessels, except as otherwise provided in § 611.90(e)(2), shall maintain a daily cumulative catch log in English. This log shall have recorded on a daily and a cumulative basis the round weight of all catches of all allocated species during the permit period. The log shall be maintained aboard the vessel during the duration of the permit period. Information for each fishing area shall be maintained on a separate page of the log.

(2) The log shall contain the following information:

(i) Name and call sign of the vessel.

(ii) Permit number.

(iii) Date.

(iv) Allocated species by common name and species code number (see Appendix I).

(v) Fishing area and area code number where caught (see Appendix II).

(vi) Daily catch by allocated species to the nearest tenth of a metric ton (0.1 m.t.).

(vii) Disposition of the catch: human consumption (including consumed on board), fishmeal, or discarded.

(viii) Cumulative total catch for each allocated species in each fishing area.

· · ·

50 C.F.R. § 611.9 (1980).

The FCMA divides the coastal waters of the United States into eight fishery regions. *See* 16 U.S.C. § 1852(a) (1976). *See also* 50 C.F.R. §§ 601.11–.23 (1980).

3. Foreign fishing is defined as "fishing by a vessel other than a vessel of the United States." 16 U.S.C. § 1802(12) (Supp. III 1979). The MYS PROKOFYEVA is a trawler of Soviet Union registry weighing 2326 gross tons. The vessel was therefore engaged in foreign fishing activities. *See generally United States v. Seafoam II*, 528 F.Supp. 1133 (D.Alaska 1982).

4. The fishery conservation zone is the 200 mile jurisdictional boundary established by Congress in the FCMA. *See* 16 U.S.C. § 1811 (1976).

5. Section 1861 of the Act allows authorized officers *inter alia* to board and inspect any fishing vessel within the fishery conservation zone. Seizure of the vessel and its contents is permitted if it reasonably appears the vessel was used or employed in the violation of any provision of the FCMA. *See* 16 U.S.C. § 1861(b) (1976). Claimant admits defendant vessel was boarded while inside the fishery conservation zone.

6. *See* 50 C.F.R. § 611.9(d) (1980) (cited in relevant part at note 2 *supra*).

7. Claimant originally also sought summary judgment on its counterclaim against the Government for civil rights violations. The motion was withdrawn at oral argument as to the counterclaim.

implementing regulation at issue. In challenging the FCMA, it is argued the controlling law in this case is a 1958 treaty, to which the United States is a party, which provides for conservation of fishery resources on a nondiscriminatory basis. A provision in this treaty explicitly prohibits discrimination against foreign fishermen. *See* Convention on Fishing and Conservation of the Living Resources of the High Seas, art. 7, § 2(c), 17 U.S.T. 139, T.I.A.S. No. 5969 [hereinafter the Treaty].[8] Claimant maintains the FCMA did not abrogate this portion of the Treaty. Hence, regulation 50 C.F.R. § 611.9 is in violation of law since it discriminates against foreign fishermen by imposing a greater burden on them than on domestic fishermen. In the alternative, claimant challenges the regulation on the basis that the agency promulgated the regulation beyond the authority given it and contrary to the will of Congress.

## A. Abrogation of the Treaty

■ According to the United States Constitution, both treaties and legislative enactments are the supreme law of the land. U.S. Const. art. VI, cl. 2. If the two are inconsistent, the one taking effect more recently will control the other insofar as they conflict. *Reid v. Covert*, 354 U.S. 1, 18, 77 S.Ct. 1222, 1231, 1 L.Ed.2d 1148 (1957). *See also Head Money Cases*, 112 U.S. 580, 597–99, 5 S.Ct. 247, 253–54, 28 L.Ed. 798 (1884); *The Cherokee Tobacco*, 78 U.S. (11 Wall.) 616, 620–21, 20 L.Ed. 227 (1870).

■ In the present case, it is apparent that Congress' enactment of the FCMA in 1976 abrogated Article 7 of the 1958 Treaty. While there is no explicit mention of the 1958 Treaty in the FCMA, implicit reference is made at 16 U.S.C. § 1822(b) (1976). That provision provides as follows:

(b) Treaty renegotiation.—The Secretary of State, in cooperation with the Secretary, shall initiate, promptly after April 13, 1976, the renegotiation of any treaty which pertains to fishing within the fishery conservation zone (or within the area that will constitute such zone after February 28, 1977), or for anadromous species or Continental Shelf fishery resources beyond such zone or area, and *which is in any manner inconsistent with the purposes, policy, or provisions of this chapter*, in order to conform such treaty to such purposes, policy, and provisions. *It is the sense of Congress that the United States shall withdraw from any such treaty, in accordance with its provisions, if such treaty is not so renegotiated within a reasonable period of time after April 13, 1976.*

*Id.* (emphasis added). It is clear to the court that the relevant portion of the Treaty is inconsistent with the purposes, policy, and provisions of the FCMA.[9] It is further evident that the Treaty at issue was not renegotiated within a reasonable period of time after April 13, 1976, so as to conform the Treaty to the purposes, policy, and provisions of the FCMA.[10] Thus, the plain

---

**8.** *See* note 9 *infra.*

**9.** The relevant portion of the Treaty provides as follows:

1. Having regard to the provisions of paragraph 1 of article 6, any coastal State may, with a view to the maintenance of the productivity of the living resources of the sea, adopt unilateral measures of conservation appropriate to any stock of fish or other marine resources in any area of the high seas adjacent to its territorial sea, provided that negotiations to that effect with the other States concerned have not led to an agreement within six months.

2. The measures which the coastal State adopts under the previous paragraph shall be

valid as to other States only if the following requirements are fulfilled: . . .

(c) That such measures do not discriminate in form or in fact against foreign fishermen.

Convention on Fishing and Conservation of the Living Resources of the High Seas, art. 7, 17 U.S.T. 139, T.I.A.S. No. 5969. In contradiction to the Treaty, the FCMA discriminates against foreign fishermen by subjecting their activities to comprehensive regulation. *See, e.g.,* 16 U.S.C. § 1824 (1976) (special permits required), 50 C.F.R. §§ 611.1–.95 (1980) (implementing regulations for foreign fishing only).

**10.** Negotiations for a comprehensive Law of the Sea Treaty were taking place at the time the FCMA was enacted. *See* 16 U.S.C. § 1881 (1976). To date, however, the United States

meaning of § 1822(b) reveals that the FCMA has abrogated Article 7, § 2(c) of the Treaty at this time.

Both parties' pleadings make numerous references to the legislative history of the FCMA in arguing the effect to be given the Treaty. The court believes the statute itself is sufficiently clear to reveal Congress' intent regarding the conflict between the Act and the Treaty. Nonetheless, the legislative history must be considered. *See Watt v. Alaska*, 451 U.S. 259, 265–67, 101 S.Ct. 1673, 1677–78, 68 L.Ed.2d 80 (1981); *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 9–11, 96 S.Ct. 1938, 1942–1943, 48 L.Ed.2d 434 (1976); *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 870–72 (9th Cir. 1981).

The legislative history in the present case indicates that Congress was well aware of the conflict between Article 7 of the Treaty and the proposed FCMA. *See* A Legislative History of the Fishery Conservation and Management Act of 1976, at 291–335 (Comm. Print 1976) [hereinafter Committee Print]. Much of the Congressional debate was particularly focused on the conflicting goals of the FCMA and Article 7, § 2(c) of the Treaty. Commentary by Senators Cranston and Gravel supporting the Treaty makes reference to the need for the United States to abide by Article 7, because it reflects customary international law. It was further argued enforcement procedures under the Treaty were preferable to those proposed in the FCMA. *See* Committee Print at 294–98, 331–35. The court notes that claimant makes some of the same arguments on behalf of the Treaty, as were raised at the Congressional hearings.

Perusal of the legislative history allows this court to conclude that Congress intended to abrogate Article 7, § 2(c) of the Trea-

ty. Senators who were the primary supporters of the FCMA indicated the Article 7 approach was an "unproven method of protecting our fisheries resources." *Id.* at 317. The record further shows that senators favoring the Treaty sought to persuade Congress to adopt their views in an amendment to Senate Bill 961. This amendment would have required that FCMA implementing regulations be promulgated pursuant to Article 7 of the Treaty.[11] It is significant that opposition to the amendment was so strong that the sponsoring senator withdrew it before a vote could be taken.[12] Based on the foregoing, the legislative history is sufficient to support the intent of Congress, as plainly stated by 16 U.S.C. § 1822(b), that the United States withdrew from the Treaty insofar as it conflicted with the FCMA.

*B. Challenges to 50 C.F.R. § 611.9*

In support of its motion for summary judgment, claimant challenges the catch log regulations found at 50 C.F.R. § 611.9. Considering the prior analysis, arguments by claimant which assume the validity of Article 7 of the Treaty are in error. Claimant's remaining challenge to the regulations attacks the authority of the agency that promulgated the regulations. It is alleged that the catch log regulations, which admittedly discriminate against foreign fishermen, were beyond the will of Congress.

Congress expressly delegated to the Secretary of Commerce general rule-making power to implement the provisions of the FCMA. *See* 16 U.S.C. § 1855(g) (1976). Authority to create regulations was then properly delegated to the National Oceanic and Atmospheric Administration (NOAA). The court recognizes that only a limited power is granted an administrative agency charged with the administration of a feder-

---

has not entered a new treaty. In addition, the 1958 Convention on Fishing and Conservation of Living Resources of the High Seas had not been superseded by another treaty as of 1981. *See* A List of Treaties and Other International Agreements of the United States in Force on January 1, 1981, p. 287. While the FCMA does not define what constitutes a "reasonable time", legislative history for § 1822(b) address-

es the need for quick action and allows an inference that a reasonable period of time has passed. *See* S. Rep. No. 94–416, Committee Print at 683.

11. See the Senate floor debates on Amendment No. 1331. Committee Print at 286–89, 331–35.

12. *See id.* at 253.

al statute. The power delegated only allows the agency "to adopt regulations to carry into effect the will of Congress as expressed by the statute." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 213–14, 96 S.Ct. 1375, 1391, 47 L.Ed.2d 668 (1976).

In the present case, the regulations challenged are not beyond the will of Congress. The Secretary of Commerce is given broad power to promulgate FCMA regulations by virtue of the provision: "The Secretary may promulgate such regulations, in accordance with section 553 of Title 5, as may be necessary to discharge such responsibility *or to carry out any other provision of this chapter.*" 16 U.S.C. § 1855(g) (1976) (emphasis added). This Congressional mandate could not be more easily interpretable by the court. In accordance with *Watt v. Alaska* and related cases, however, the court must consider the legislative history. The Report of the Senate Committee on Commerce states as follows regarding § 1855(g):

> The Secretary is authorized to promulgate regulations in accordance with the provisions of this title and section 553 of title 5, United States Code, without regard to subsection (a) thereof, to govern fishing by vessels of the United States and foreign fishing (1) within the fishery conservation zone (and vessels of the United States fishing for coastal species beyond such zone), (2) for anadromous species, and (3) Continental Shelf fishery resources. *In addition, such regulations shall pertain to, but need not be limited to, the operation of the Councils, the setting of fees, procedures for obtaining data and statistics relating to fishing, and other matters relating to the purposes of this Act.* Such regulations shall provide for full consultation and cooperation with all other interested Federal agencies and departments, with any coastal State, and with any foreign nation, through the Secretary of State, and for consideration of the views of any interested member of the general public. The Secretary is further authorized, consistent with the purposes and provisions of this title, to amend or rescind any such regulations.
>
> S.Rep.No.94–416, Committee Print at 713

(emphasis added). The preceding passage supports the Secretary's promulgation of catch log regulations as pertaining to both "procedures for obtaining data and statistics" and "other matters relating to the purposes of this Act." In addition, the regulations are in no way contradictory to such express discriminatory restrictions on foreign fishing as the creation of a fishery conservation zone and the requirement for vessels engaged in foreign fishing to have a valid FCMA permit. *See* 16 U.S.C. §§ 1811, 1821, 1824 (1976). For all of the foregoing reasons, the court holds the regulations at 50 C.F.R. § 611.9 were lawfully promulgated.

## C.  Determination of the Motions

All three of the counts in plaintiff's second amended complaint allege violation of the catch log regulations at 50 C.F.R. § 611.9(d). Although the applicable law is settled in the case, the facts are not. Claimant denies outright the statistics provided the court for each of the counts.[13] Summary judgment is only proper when there is no genuine issue as to any material fact. *See* Fed.R.Civ.P. 56. Since material facts are disputed in this case, summary judgment must be denied both claimant and plaintiff regarding whether the vessel was in violation of the catch log regulations.

Accordingly, IT IS ORDERED:

THAT summary judgment is denied both parties regarding the existence of a violation under 50 C.F.R. § 611.9(d).

---

13. At first glance, nothing in claimant's answer appears to address paragraph 28 of the second amended complaint. The court notes that both paragraphs 27 and 28 of claimant's answer deal with paragraph 27 of the amended complaint. By liberally construing the pleadings, it is reasonable for this court to infer that paragraph 28 of claimant's answer was meant to address paragraph 28 of the amended complaint.