ISLAMORADA CHARTER BOAT ASSO-
CIATION, a corporation not for
profit, et al, Plaintiffs,

v.

C. William VERITY, Secretary of Com-
merce; National Oceanic and Atmo-
spheric Administration; and National
Marine Fisheries Service, Defendants.

No. 87–10102–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Jan. 8, 1988.

McDonald & Associates, P.A., Home-
stead, Fla. by James W. McDonald, Jr., for
plaintiffs.

Leon B. Kellner, U.S. Atty., Miami, Fla.
by Guy W. Harrison, for defendants.

## ORDER DENYING PRELIMINARY INJUNCTION

JAMES LAWRENCE KING, Chief
Judge.

The plaintiffs are captains of fishing
charter boats operating in the middle of
upper Florida Keys, or individuals whose
business is directly affected by the action
of the defendants in closing federal waters
off the Florida Keys to the taking of King
Mackerel (commonly known as kingfish).
The promulgation of the closure regula-
tions by the defendants, reduced to zero
the number of kingfish permitted to be
taken in the affected federal waters.

The plaintiffs sought, on December 16,
1987, a preliminary injunction challenging
these regulations. An evidentiary hearing
was held and extensive testimony taken on
the application for preliminary injunction
on December 21, 23, 28, and 29, 1987. The
lawyers for each side have thoroughly
presented the relevant issues in the presen-
tation of this testimony, their oral argu-
ments, and briefs.

The emergency nature of this litigation,
and its importance to all of the parties
involved, requires prompt attention by the

court. For this reason, the court will not, in this opinion, review the extensive historical background of the Magnuson Fishery Conservation and Management Act (Magnuson Act) Pub.L. 94–265, 90 Stat. 331 (1976) (codified as amended at 16 U.S.C. § 1801 *et seq.*)[1]

In this action, plaintiffs allege that the National Marine Fisheries Service has discriminated against the fishermen of the Florida Keys and challenge the implementation of a quota for the recreational catch of kingfish. The quota, instituted under the authority of the Magnuson Act and challenged by the plaintiffs in this litigation, is part of a fisheries management plan for Coastal Pelagic Migratory Resources of the Gulf of Mexico and South Atlantic, 50 C.F.R. part 642.22, as modified in the Federal Register.

Pursuant to the plan, the Secretary of Commerce has promulgated specific regulations regarding kingfish. The regulations establish a fishing season for Gulf migratory group kingfish from July 1, 1987 to June 30, 1988, 50 C.F.R. 642.22. The area containing the Gulf migratory group extends from the Texas/Mexico border to northern Florida from November to March, and to the southern tip of Florida from April through October, 50 C.F.R. 642.29. The regulations establish a sportfishing quota of 1.5 million pounds of kingfish and 1.08 million pounds of spanish mackerel for the fishing season, 50 C.F.R. 642.21 (as modified 52 Fed.Reg. 2501,4 (July 2, 1987)). Once the quota has been reached or is projected to be reached, the Secretary will reduce the sportfishing bag limit to zero by publishing a Notice in the Federal Register if the species is overfished as defined in 50 C.F.R. 642.4 (as modified 52 Fed.Reg. 23838 (June 25, 1987). Upon such notice, all fish caught must be released, 50 C.F.R. 642.22 (as modified 52 Fed.Reg. 23840 (June 25, 1987).

Plaintiffs challenge enforcement of these regulations. Plaintiffs' specific allegations are (1) that the quota enacted by regulation is arbitrary and capricious (Complaint parag. 14); (2) that the quota was not set large enough and, therefore, the Secretary's reduction of the sportfishing bag limit to zero on the grounds that kingfish are overfished, pursuant to regulation, is incorrect (Complaint parag. 7); and (3) that the combination of the fishing area for Gulf group mackerel and the fishing season, both set by regulation, deprive Florida fishermen, and in particular Middle Keys fishermen, of the chance to catch as many mackerel as fishermen in other states, violating 16 U.S.C. § 1851(a)(3)'s prohibition of discrimination between fishermen of different states and requirement of fair allocation of fishing privileges (Complaint parag. 10).

## 1. JURISDICTION

Counsel for the defendants, Secretary of Commerce, National Oceanic and Atmospheric Administration, and National Marine Fisheries Service, have urged the court to deny the application for preliminary injunction upon the grounds that 16 U.S.C. § 1855(d), governing review by U.S. District Courts of challenges to regulations under Magnuson Act, deprives the court of subject matter jurisdiction to grant preliminary relief. *Pacific Coast Federation v. Secretary of Commerce*, 494 F.Supp. 626 (N.D.Cal.1980).

The plaintiffs rely upon Title 5 U.S.C. § 706 and § 305 of the Magnuson Act 16 U.S.C. § 1855(d) sub-paragraph 2.

■ The plaintiffs argue, relying in part on *Oestereich v. Selective Service System*, 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968), and *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), that Congress cannot limit the court's jurisdiction to review under the facts and circumstances of this case. This argument, plaintiffs suggest, has particular applicability in the case at bar because they are not requesting injunctive relief from the fishery plan as set forth by the National Marine

---

**1.** A discussion of the historical background may be found on pages one through eight of defendants' memorandum in opposition to plaintiffs' motion for preliminary injunction filed December 30, 1987. This historical background summation is factual in nature and one with which the plaintiffs do not take issue.

Fisheries Service, but seek instead to enjoin what they contend is "the unfair, inequitable, and unlawful implementation of the fishery plan." The court, at the conclusion of the oral argument on the government's emergency motion for cancellation of the preliminary injunction hearing and dismissal of the case with prejudice, ruled against the defendants on this issue.

In the interest of brevity, the court will not summarize the court's reasoning pronounced in the record in open court, on that occasion. The court has again reviewed the matter of jurisdiction in the preparation of this opinion and the subsequent arguments by both parties on this issue, and concludes and finds that it has jurisdiction to consider the issues here presented on preliminary injunction.

■ The defendants also argue that this action is barred by the statute of limitation period of 16 U.S.C. § 1855(d). It is the position of the defendants that any challenge to the Secretary of Commerce's regulations must be brought within 30 days from the date the regulations are promulgated. The regulations at issue in this case have been effective since February 4, 1983, 50 C.F.R. Part 642, and amended July 2, 1987, 52 Fed.Reg. 25014 (July 2, 1987).

The court concludes that the case is not barred by the statute of limitations. The regulations here under attack were implemented on December 15, 1987. Suit was filed December 16, 1987, the day after the closure of the fisheries took effect. The alleged irreparable injury to the plaintiffs, caused by the regulations, did not commence until December 15, 1987. The suit by the plaintiffs is timely and the court has jurisdiction to consider the issues raised on the application for preliminary injunction.

## 2. PRELIMINARY INJUNCTION

■ The legal standards that must be met as the predicate for an order of preliminary injunction are: (1) a showing of likelihood of prevailing on the merits at the final hearing; (2) a showing of irreparable harm to be suffered by the one seeking the injunction if the stay is denied; (3) that the issuance of the preliminary injunction would be in the public interest; and (4) that there is no manifest danger of substantial harm to other parties. *United States v. Lambert*, 695 F.2d 536 (11th Cir.1983), *Hamblin Testing Labratories v. United States Atomic Energy Commission*, 337 F.2d 221 (6th Cir.1964).

The plaintiffs have been unable to carry their burden of proof for entitlement to a preliminary injunction at this stage of the litigation.

A principal part of both the challenge and the proof dealt with discrimination against plaintiffs because they fish in federal waters and are thus subject to the federal regulations, as contrasted with sportsfishermen and charter boat captains who fish in State of Florida waters and who are thus exempt from the contested regulations.

During the course of the evidentiary hearings the proof established that this apparent disparate treatment between federal fishermen off the coast of Florida and state fishermen within the state boundaries (up to three miles of shore on the east coast) had disappeared. The State of Florida, acting under its own regulations and guidelines, had adopted the same regulatory closing of state waters and fisheries as encompassed by the federal regulations. This element of discrimination, in existence at the time of filing the complaint, was, therefore, not a valid point to support plaintiffs' position at the time of the conclusion of the evidentiary hearing on the preliminary injunction.

Plaintiffs have also claimed discrimination between Florida fishermen and those of Texas, Louisiana and Alabama. The Magnuson Act clearly prohibits the adoption of conservation and management measures that discriminate between residents of different states. Any such fishing privileges among the various United States fishermen must be fair and equitable, reasonably calculated to promote conservation and carried out in a manner so that no particular individual corporation or other entity acquires an excessive share of such

privileges. 16 U.S.C. § 1851(a)(4) (National Standard 4).

The testimony of the witnesses presented during the evidentiary phase of the application for preliminary injunction, and in particular that of Mr. Craig R. O'Connor, Southeast Regional Director of National Marine Fisheries Service, impel the conclusion that the defendants did not discriminate in the establishment of a recreational quota for the Gulf Migratory Group of King Mackerel throughout its migratory range. In fact, the evidence established that the majority of the recreational quota for this particular group of fish was landed by Florida fishermen during the applicable reporting period.

With respect to the issue of balance of harm and the public interest, the court is convinced on the basis of the record as established thus far, that a preliminary injunction should not issue. It is clearly in the public interest to effectively manage the resource of the Gulf Migratory Group King Mackerel. Further depletion of this resourse can, if defendants' experts are correct, lead to possible extinction of the species. The testimony is clear that the present supply of King Mackerel is at a critically low level.

The defendants elaborate process of determining fishery management plans and quotas, in establishing the challenged regulations, show a concern for the rights of both commercial and recreational fishermen, a concern for the health of the fish resource, and a reasonable and orderly management of the fishery.

The court is not unmindful of the testimony of the witnesses for the plaintiffs demonstrating the serious economic impact the closure order will have on the fishermen of the middle and upper Keys of the State of Florida. In the balancing of the public interest and the respective harm that may result from the issuance of a preliminary injunction however, the court concludes that the plaintiffs have failed to establish their entitlement to a preliminary injunction. It is, therefore

ORDERED, ADJUDGED and DECREED that the application for prelimi-nary injunction, be and the same is hereby, denied.

DONE and ORDERED at the United States Courthouse, Federal Courthouse Courthouse Square, 301 N. Miami Avenue, Miami, Florida, this 8th day of January 1988.