878 F.2d 134
 19 Envtl. L. Rep. 21,327
 Kenneth W. KRAMER, et al., Plaintiffs-Appellees,
v.
Robert A. MOSBACHER, in his official capacity as Secretary
of Commerce; National Oceanic and Atmospheric
Administration; William E. Evans, in his official capacity
as Assistant Administrator for Fisheries of the U.S.
Department of Commerce; Joseph Angelovic, in his official
capacity as Regional Director; National Marine Fisheries
Services, Defendants-Appellants.
 No. 88-2995.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 14, 1989.
Decided June 20, 1989.
 
 Charles Ray Shockey (Donald A. Carr, Acting Asst. Atty. Gen., Anne S. Almy, James C. Kilbourne, Dept. of Justice, William J. Nielander, Susan K. Auer, Nat. Oceanic and Atmospheric Admin., Dept. of Commerce, Washington, D.C., on brief) for defendants-appellants.
 Daniel F. McLawhorn, Sp. Deputy Atty. Gen., Raleigh, N.C., Stevenson Lee Weeks (Wheatly, Wheatly, Nobles, Weeks & Wainwright, P.A., Beaufort, N.C., on brief) for plaintiffs-appellees.
 Before HALL, SPROUSE, and CHAPMAN, Circuit Judges.
 CHAPMAN, Circuit Judge:
 
 
 1
 This dispute involves a challenge to the closure of the South Atlantic King Mackerel fisheries. Following plaintiffs' petition to the district court requesting relief, the court, on November 25, 1988, enjoined enforcement of the closure. Because we believe the district court neither had jurisdiction to entertain the complaint against the Secretary nor had authority to grant injunctive relief, we reverse.
 
 
 2
 * Pursuant to the Magnuson Fishery Conservation and Management Act of 1976, 16 U.S.C. Secs. 1801-1882, Congress has delegated to the Commerce Department broad authority to manage and conserve coastal fisheries. The Act creates independent bodies, Regional Fishery Management Councils, which help the Department carry out specific management and conservation duties. This case arises out of actions taken by the South Atlantic Regional Council, which consists of representatives from North Carolina, South Carolina, Georgia, and Florida. 16 U.S.C. Sec. 1852. The Council's principal task is to prepare fishery management plans for its area, which must "assess and specify the present and probable future condition of, and the maximum sustainable yield" of a fishery. 16 U.S.C. Secs. 1852, 1853. Council plans are adopted or rejected by the Secretary. 16 U.S.C. Sec. 1854. If adopted, a plan is put into effect by regulations issued by the Secretary. 16 U.S.C. Sec. 1855.
 
 
 3
 Such a plan for Atlantic king mackerel was implemented through regulations adopted in 1982, and was subsequently amended in 1985 and 1987. 50 C.F.R. pt. 642 (1987). Together, the regulations require that the Council assess the stock of king mackerel and recommend a "total allowable catch," in pounds, which reflects a "level specified to realize a particular management strategy" for the upcoming fishing year. Briefly stated, this "total allowable catch" forms the basis for the Council's determination of commercial and recreational limits. In fashioning a quota, the Council is obligated to consider a wide range of evidence. 50 C.F.R. Sec. 642.27 (1987). Finally, the regulations require the Secretary to close a fishery if a quota is reached. 50 C.F.R. Sec. 642.22 (1987).
 
 
 4
 In April, 1988, the South Atlantic and Gulf Councils met jointly to determine the 1988-1989 king mackerel limits. Following recommendations of scientists and the advice of an intercouncil mackerel committee, the Councils set the annual "total allowable catch" for king mackerel at seven million pounds, a significant reduction from the figure used in the preceding year. In June, 1988, the Secretary issued proposed regulations to implement the new limit; he published the final regulations on July 8, 1988. The regulations established a commercial quota of 2.6 million pounds and a recreational limit of 4.4 million pounds.
 
 
 5
 By October the Secretary had concluded that the recreational quota for the year had been reached and that the stock was "overfished." Generally, "overfishing" means "an excessive mortality rate on a stock of fish." 50 C.F.R. Sec. 642.2. Pursuant to 50 C.F.R. Sec. 642.22, the Secretary, in the October 14, 1988 Federal Register, published notice that he was closing the recreational season, effective October 17. On November 18, 1988, effective November 23, the Secretary announced a closure of the commercial season. The order required both fisheries to remain closed through March 31, 1989.
 
 
 6
 The closure order prompted this appeal. On November 10, 1988, 85 fishermen, 28 businesses, and the State of North Carolina filed a complaint asking, alternately, for a temporary restraining order, a preliminary or permanent injunction against enforcement of the order, or an order increasing the total allowable catch by 2.6 million pounds. On November 22 the district court issued a preliminary injunction against enforcement of the commercial and recreational closures. The court concluded, without elaboration, that it had jurisdiction to hear the complaint under 16 U.S.C. Secs. 1855(d) and 1861(d), the portions of the Magnuson Act that provide for judicial review of Department regulations and enforcement actions. On February 23, 1989, this court granted the Secretary's motion for an expedited appeal and stayed the injunction pending such appeal.
 
 II
 
 7
 Plaintiffs-appellees first contend that this case became moot on March 31, 1989, when the fishing year ended and the catch limits for the 1988-1989 fishing year expired. Their position, in essence, is that the factual basis of the injunction, is, as a result, no longer in controversy. However, we find this case is not moot and falls squarely within the "capable of repetition, yet evading review" doctrine. That is, both the yearly reevaluation of catch limits and closure orders present circumstances which are "too short to be fully litigated prior to [their] cessation or expiration." Moreover, there is "a reasonable expectation that the same complaining party," here North Carolina fishermen and fishing businesses, "would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350 (1975); Southern Pacific Terminal Co. v. Interstate Commerce Commission, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911).
 
 III
 
 8
 The second, and principal, question on appeal is whether the district court had jurisdiction over the complaint. Both parties agree that only two provisions within the Magnuson Act arguably pertain to the judicial review of Department regulations: 16 U.S.C. Secs. 1855(d) and 1861(d). As part of the larger scheme of Sec. 1855, which addresses the implementation of fishery management plans, 1855(d) provides that:
 
 
 9
 Regulations promulgated by the Secretary under this chapter shall be subject to judicial review to the extent authorized by, and in accordance with, chapter 7 of Title 5, if a petition for such review is filed within 30 days after the date on which the regulations are promulgated; except that (1) section 705 of such title is not applicable, and (2) the appropriate court shall only set aside any such regulation on a ground specified in section 706(2)(A), (B), (C), or (D) of such title.
 
 
 10
 Section 1861(d), within Sec. 1861, which concerns "Enforcement" of the Act, allows that:
 
 
 11
 The district courts of the United States shall have exclusive jurisdiction over any case or controversy arising under the provisions of this chapter. In the case of Guam, and any Commonwealth, territory, or possession of the United States in the Pacific Ocean, the appropriate court is the United States District Court for the District of Guam, except that in the case of American Samoa, the appropriate court is the United States District Court for the District of Hawaii. Any such court may, at any time-
 
 
 12
 (1) enter restraining orders or prohibitions
 
 
 13
 (2) issue warrants, process in rem, or other process;
 
 
 14
 (3) Prescribe and accept satisfactory bonds or other security; and
 
 
 15
 (4) take such other actions as are in the interests of justice.
 
 
 16
 Undoubtedly the sweep of Sec. 1861(d) is broad, as it includes "any case or controversy arising under" the Magnuson Act. Courts, however, in reading the statute as a whole, have recognized that review under the terms of Sec. 1861(d) has been generally restricted to direct enforcement actions, usually involving the seizure and condemnation of vessels. See, e.g., United States v. Marunaka Maru No. 88, 559 F.Supp. 1365 (D.Alaska 1983) (seizure); United States v. MYS Prokofyeva, 536 F.Supp. 793 (D.Alaska 1982) (seizure). More pertinent to this appeal, it has been held that a review of regulations, normally considered only under Sec. 1855(d), can be brought under the wider domain of Sec. 1861(d), if, as part of an enforcement proceeding defense, a collateral attack is made on the regulations which form the basis of the enforcement action. Gulf of Maine Trawlers v. United States, 674 F.Supp. 927, 933 (D.Me.1987); United States v. Seafoam II, 528 F.Supp. 1133, 1138-39 (D.Alaska 1982).
 
 
 17
 This case cannot, however, be considered a response to an enforcement action. The Secretary has not taken any affirmative action against plaintiffs. Instead, plaintiffs themselves have made a direct challenge to the substance of a regulation. As such, this case is ultimately subject to review under the terms of Sec. 1855(d), not Sec. 1861(d). Alaska Factory Trawler Association v. Baldridge, 831 F.2d 1456, 1460, 1463 (9th Cir.1987); National Food Processors' Association v. Klutznick, 507 F.Supp. 76 (D.D.C.1981); Hanson v. Klutznick, 506 F.Supp. 582 (D.Alaska 1981). Moreover, contrary to plaintiffs' contention, the existence of Sec. 1855(d) does not present a situation in which Congress has attempted to wholly preclude review of an administrative regulation. Traynor v. Turnage, 485 U.S. 535, 108 S.Ct. 1372, 99 L.Ed.2d 618 (1988); Abbott Laboratories v. Gardner, 387 U.S. 136, 141, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967) (there is a presumption in favor of judicial review of agency action which is overcome only upon showing of clear and convincing evidence of a contrary legislative intent). Here the statutory limitation is clear, and it does not prevent judicial review of Magnuson Act regulations.
 
 
 18
 Section 1855(d) requires that challenges to the Secretary's regulations be filed within 30 days "after the date on which the regulations were promulgated." Therefore, the threshold issue is whether plaintiffs filed their complaint within the thirty day period. Plaintiffs contend that this period did not begin to run until October 14, 1988, when the Secretary issued a notice of his intent to close the commercial fishery, and not on July 8, when the regulations which formed the basis of the closure were published. They argue that their filing date of November 10 was timely.
 
 
 19
 This position is without merit. The district courts which have considered the issue have almost universally agreed that the thirty day limit commences at the time the regulations are published and that this limit is to be strictly construed. Readenour v. Mosbacher, Civil Action No. 89-0432 (E.D.La. May 17, 1989); National Food Processors' Association, 507 F.Supp. at 78; Hanson, 506 F.Supp. at 585. As was stated in National Food Processors', "To hold otherwise would undermine the time limits as set by Congress." National Food Processors' Association, 507 F.Supp. at 78. The only case that is in disagreement is Islamorada Charter Boat Association v. Verity, 676 F.Supp. 244 (S.D.Fla.1988). The court there held that the date of notice of closure, rather than the date of publication and effectiveness, was the determinative moment at which the 30 days begins to run. Such a distinction is unwarranted because the Secretary is required by the regulations to close a fishery when its quota is reached. 50 C.F.R. Sec. 642.22. As a result, catch limits are in fact put into operation on the date of the regulation's publication, and not at some later time. Because plaintiffs did not file their complaint within the thirty day period, the district court lacked jurisdiction over the challenge to the substance of the regulation.
 
 IV
 
 20
 Even had the action been timely, the remedy of injunction was unavailable. Section 1855(d) provides that Section 705 of Title 5 is not applicable to the judicial review of Magnuson regulations. Section 705 allows a court to "issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending the review proceedings." The exclusion of Section 705 powers prevents a reviewing court from issuing the sort of preliminary injunction granted by the district court. As was stated in the conference report to the Act: regulations are subject to judicial review "except that the reviewing court is without authority to enjoin the implementation of those regulations pending the judicial review." 1976 U.S.Code Cong. & Admin.News, 593, 678. See also Pacific Coast Federation of Fishermen's Associations, Inc. v. Secretary of Commerce, 494 F.Supp. 626, 627-29 (N.D.Cal.1980) ("On its face, Section 305(d) [1855(d) ] precludes the grant of a preliminary injunction.").
 
 
 21
 In summary, we conclude that: (1) the legal issues presented are not moot, (2) that under the terms of 16 U.S.C. Secs. 1855 and 1861 the district court lacked jurisdiction over plaintiffs' complaint, and (3) that injunction is not a permissible remedy in this sort of challenge to a regulation promulgated under the Magnuson Act. The judgment of the district court is reversed.
 
 
 22
 REVERSED.