**MIDWATER TRAWLERS COOPERATIVE,**
Plaintiff,

v.

**Robert A. MOSBACHER, Secretary, United States Department of Commerce, Defendant,**

**Greenpeace USA and Yukon–Kuskokwim Fisheries Task Force Intervenor–Defendants.**

**Civ. A. No. 89–0498–LFO.**

United States District Court, District of Columbia.

Dec. 1, 1989.

Eldon V.C. Greenberg, Dina R. Lassow, Galloway & Greenberg, Washington, D.C., for plaintiff.

Diane M. Connolly, Dept. of Justice, Land & Natural Resources Div., Washington, D.C. (Robert Taylor, Constance Sathre, Craig O'Connor, Office of the General Counsel, Nat. Oceanic & Atmospheric admin. of counsel), for defendant.

Eric Smith, Anchorage, Alaska, for intervenor-defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff is a cooperative formed by 33 United States-flag fishing vessel owners in Alaska who harvest groundfish in the Bering Sea/Aleutian Island area and sell their catch to foreign-flag processing vessels. Plaintiff claims that the fishing limitations set by the Secretary of Commerce for that area are artificially low and therefore violate certain provisions of the Magnuson Fishery Conservation and Management Act, 16 U.S.C. §§ 1801–82. The Secretary has moved to dismiss, claiming that plaintiff's challenge is barred both by a thirty-day statute of limitations and by the absence of any reviewable action by the Secretary. In addition, all three parties have filed cross-motions for summary judgment. Because the Secretary's motion to dismiss is dispositive, it is not necessary to address the summary judgment motions.

### I.

The Magnuson Act vests the federal government with the authority to regulate fishing by foreign and domestic fishers in the United States' Exclusive Economic Zone, an area generally 3 to 200 miles off shore. *See* 16 U.S.C. §§ 1811(a), 1812(1). The Act vests much of the responsibility for the management of fisheries in eight regional councils. *See* 16 U.S.C. § 1852(a). Each council formulates a long-term fishery management plan, which serves as the basis for regulation. *See* 16 U.S.C. § 1852(h)(1). The Secretary then reviews the plans for consistency with the Act's seven national standards, *see* 16 U.S.C. § 1851(a)(1)–(7), and compliance with other applicable law. *See* 16 U.S.C. § 1854(b). Once the Secretary approves a plan, he implements it by promulgating regulations. *See* 16 U.S.C. §§ 1854(b), 1855(c), (g). Until it is amended, a plan remains in effect and remains the basis for the Secretary's regulations. A plan can be amended in one of two ways: the council may submit a proposed amendment that meets the Secretary's approval, *see* 16 U.S.C. § 1854(a); or, the Secretary may amend the plan in response to a formal petition for rulemaking when the appropriate council has failed to submit any necessary amendment, *see* 16 U.S.C. § 1854(c)(1). As with the plan itself, once the Secretary approves a plan amendment, he implements it through regulations. *See* 16 U.S.C. §§ 1854(b), 1855(c), (g).

In formulating a plan, the council is required by the Act to establish an "optimum yield," which is defined as the fish harvest level that "will provide the greatest overall benefit to the Nation." *See* 16 U.S.C. §§ 1802(18), 1853(a)(3). This optimum yield is determined by two sets of factors: (1) the total amount of fish that may be harvested while still retaining a sufficient level to continue future harvesting; and (2) any other "relevant economic, social, or ecological factor." *See* 16 U.S.C. § 1802(18); 50 C.F.R. § 602.11(c)(1). Once established, the optimum yield defines the minimum and maximum levels of total harvest and does not vary unless the plan is amended. The actual amount of each species that may be harvested in any given season, however, is established annually and is called the total allowable catch.

The dispute here surrounds the optimum yield set by the North Pacific Fishery

Management Council for the Bering Sea/Aleutian Islands groundfish fishery. The current optimum yield was adopted by the council on May 20, 1982 as Amendment 1 to the fishery management plan. *See* 49 Fed.Reg. 397 (Jan. 4, 1984). After revision and clarification, Amendment 1 was approved by the Secretary on July 25, 1983, and published as a proposed rule for notice and comment on September 19, 1983. *See* Administrative Record 75; 49 Fed.Reg. 397 (citing 48 Fed.Reg. 41791 (Sept. 19, 1983)). After receiving and responding to several comments, *see id.* at 398–99, the Secretary implemented Amendment 1 by a final regulation published on January 4, 1984. *See id.* at 400. In its final form, the regulation established an optimum yield of 1.4 to 2.0 million metric tons and required the Secretary to set the total allowable catch specifications for a given season so that their sums fall within the optimum yield range. *See* 50 C.F.R. § 675.20(a).

In every year since 1984, the council has considered and rejected requests to amend the plan to increase the optimum yield. *See* Administrative Record 121; 146 at 19–20; 192 at 13–14; 195 at 31. The council's most recent decision was in June 1988, when it rejected a proposal to amend the upper range of the optimum yield because of unanswered questions surrounding the effects of increased fishing in the Bering Sea. *See id.* 310 at 26.

The preliminary total allowable catch specifications for the 1989 season were published by the Secretary for notice and comment on November 29, 1988. *See* 54 Fed.Reg. 3605 (citing 53 Fed.Reg. 47998). North Pacific Fishery Management Council consulted the public and heard oral comments during its meeting on December 5–9, 1988. *See id.;* Administrative Record 313. The minutes of this meeting reflect that the council did not consider changing the optimum yield and, therefore, did not recommend any change to the Secretary. *See* Administrative Record 313. In addition to the comments considered by the council, the Secretary received and responded to several comments. *See* 54 Fed.Reg. 3605. Although plaintiff did not submit any comments, one commentator suggested that the Secretary use his emergency rulemaking powers to raise the optimum yield limit to alleviate a "socio-economic emergency." *See id.* at 3607. The Secretary's response indicated his view that emergency rulemaking was not necessary. Although the Secretary also noted that the council "had decided against making a recommendation" that he amend that optimum yield, he did not address the reasons for maintaining the optimum yield, nor did he make any finding that the optimum yield should not be amended. *See id.* at 3607. Accordingly, the final total allowable catch specifications for the 1989 season, published on January 25, 1989, continued to adhere to the 2.0 million metric ton limit. *See id.* at 3608.

## II.

■ Although plaintiff's complaint technically challenges the 1989 total allowable catch specifications, plaintiff's real grievance is with the optimum yield set in 1984. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Partial Dismissal at 24. In fact, plaintiff's complaint claims that the 1989 total allowable catch specifications are contrary to the Magnuson Act only "to the extent that they are constrained by and premised upon the [optimum yield] cap." *See* Complaint at ¶ 24.

The Secretary has moved to dismiss plaintiff's challenge to the optimum yield on the ground that it is barred by the thirty-day statute of limitations. Regulations under the Magnuson Act may be subject to direct judicial review only "if a petition for review is filed within thirty days after the date on which the regulations are promulgated." *See* 16 U.S.C. § 1855(d). Plaintiff's complaint was filed on February 23, 1989, less than thirty days after the Secretary published the regulations implementing the 1989 total allowable catch specifications. *See* 54 Fed.Reg. 3605 (January 25, 1989). The optimum yield that forms the basis for plaintiff's complaint, however, was implemented by regulations published January 4, 1984. *See* Administrative Record 75; 49 Fed.Reg. 396 (Jan. 4, 1984). Thus, plaintiff's complaint,

to the extent that it challenges the optimum yield set in 1984, is time-barred.

Plaintiff presents three reasons why it is entitled to challenge the optimum yield cap more than thirty days after the Secretary implemented it by regulation. Plaintiff first argues that the 1989 regulations specifying total allowable catch limits incorporate a challengeable decision to maintain the optimum yield. Plaintiff relies on the settled doctrine that statute of limitations time periods are reopened when an agency publishes an existing rule in the Federal Register and solicits comments on the rule even if the agency ultimately decides not to alter the rule. *See Montana v. Clark*, 749 F.2d 740, 743–44 (D.C.Cir.1984), *cert. denied*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). This exception to statutory time periods, however, applies only when the existing regulation is specifically reopened for public comment. In this case, the Secretary's 1989 request for public comment was limited to the "preliminary determinations of the initial specifications of [total allowable catch] and apportionments of groundfish that may be harvested in the [Bering Sea/Aleutian Islands] area in 1989." 53 Fed.Reg. 47998. The Secretary did not request comments on the 1984 regulation setting the optimum yield or the 1984 regulation that required the sum of the total allowable catch specifications to fall within the optimum yield range. Moreover, the Secretary could not have requested public comment on the optimum yield because that issue was not properly before him as the council had not proposed an amendment and no party had formally requested rulemaking. In approving the total allowable catch specifications recommended by the council, the Secretary specifically did not evaluate the optimum yield: "The Secretary finds … that the recommended [total allowable catch specifications], to the extent possible under the maximum [optimum yield] limit, are consistent with socioeconomic goals and objectives of the [fishery management plan]." 54 Fed.Reg. 3605. The Secretary did not open the optimum yield to public comment, nor did he consider amending it. As a consequence, the *Montana v. Clark* exception to the statute of limitations does not apply, and plaintiff cannot challenge the 1984 optimum yield by challenging the 1989 total allowable catch specifications.

In its second argument, plaintiff challenges the optimum yield more directly, arguing that the thirty-day limitations period on the 1984 optimum yield regulation began to run only after plaintiff's members were injured by the 1989 total allowable catch regulations. In making this argument, plaintiff relies heavily on *Islamorada Charter Boat Association v. Verity*, 676 F.Supp. 244 (S.D.Fla.1988), which held that the statute of limitations begins to run when a party is aggrieved by a regulation rather then when the regulation is adopted. The only circuit court to address the issue, however, held that the thirty-day limit begins to run "on the date of the regulation's publication, and not at some later time." *Kramer v. Mosbacher*, 878 F.2d 134, 137 (4th Cir.1989). The *Kramer* court specifically rejected the district court's holding in *Islamorada* and noted that "district courts which have considered the issue have almost universally agreed that the thirty day limit commences at the time the regulations are published and that this limit is to be strictly construed." *Id.* (citing *Readenour v. Mosbacher*, Civil Action No. 89–0432, 1989 WL 54379 (E.D.La. May 17, 1989); *National Food Processors Ass'n v. Klutznik*, 507 F.Supp. 76, 78 (D.D.C.1981)). The *Kramer* court noted that " '[t]o hold otherwise would undermine the time limits as set by Congress.' " *Id.* (quoting *National Food Processors Ass'n*, 507 F.Supp. at 78). These persuasive precedents establish that the statute of limitations begins to run when the regulation is promulgated. The relevant regulation here, *i.e.* the one that set the optimum yield, was published on January 4, 1984, over five years before plaintiff's complaint was filed.

Plaintiff's third argument in response to the limitations period is that, because its members were not injured by the optimum yield in 1984 and therefore could not present a justiciable case or controversy, the statute of limitations unjustly precludes review of the optimum yield cap.

Plaintiff is correct that it cannot now directly challenge the optimum yield, but an avenue of administrative appeal nevertheless remains open. Although the Secretary ordinarily will not consider amending a plan unless the council so recommends, the Secretary is authorized to prepare an amendment to the plan and to promulgate corresponding regulations if the council has failed to submit a necessary amendment. *See* 16 U.S.C. § 1854(c)(1). However, the Secretary will consider amending the plan only in response to a formal petition for rulemaking pursuant to § 4(e) of the Administrative Procedure Act, 5 U.S.C. § 553(e). Although plaintiff has repeatedly requested that the council recommend amending the optimum yield, plaintiff has yet to petition the Secretary formally for such an amendment.[1] If the Secretary rejected such a formal petition, that action would be reviewable. Thus, review of the optimum yield is not precluded.

Accordingly, because the Secretary has not reopened the optimum yield cap issue, because plaintiff's challenge to the 1984 optimum yield cap was not presented within thirty days of the publication of the regulation setting the optimum yield, and because other avenues for seeking judicial review remain open, plaintiff's claim is time-barred by the thirty-day statute of limitations set forth in 16 U.S.C. § 1855(d).

### III.

■ Plaintiff's failure to petition the Secretary for a formal amendment presents an additional and related bar to judicial review of the optimum yield. Although the Secretary promulgates regulations annually, he does not address the fishery management plan unless the council recommends an amendment or a party formally requests an amendment. Because the Secretary has not received such a council recommendation or formal request, he has not considered amending the plan to change the optimum yield. Consequently, the Secretary has not made any findings or conclusions that can be judicially reviewed.

Plaintiff contends that the Secretary has already ruled on a formal petition for rulemaking by another party. Plaintiff finds this ruling in the Secretary's response to a comment directed at the 1989 total allowable catch specifications, which suggested that the Secretary promulgate emergency regulations to raise the optimum yield. The Secretary's response indicated that he did not feel that emergency regulations were necessary. The Secretary's response, however, was not a ruling on a formal petition for an amendment—it was merely a response to an informal comment, and plaintiff's reliance on it is therefore misplaced.

Plaintiff also argues that a formal petition would be futile as the Secretary has already indicated his views on changing the optimum yield. In making this argument, plaintiff relies on a statement made by the Secretary in response to a comment about the 1988 total allowable catch specifications. The Secretary had stated that "the Council process is the appropriate forum to adjust the [optimum yield] range as [a fishery management plan] amendment is required." *See* 53 Fed.Reg. 896 (Jan. 14, 1988). Plaintiff's argument, however, is both simplistic and irrelevant. For one, the Secretary's statement simply conveys his view that the proper forum for plan amendments is the council; the statement does not indicate that the Secretary would reject a formal petition if he found that the council had failed to make a necessary amendment. Moreover, even if the Secretary did reject such a formal petition, that rejection should generate findings and conclusions conducive to judicial review.

Accordingly, plaintiff's challenge to the optimum yield cap is barred by plaintiff's failure to exhaust its administrative remedies.

### IV.

Because plaintiff is barred from challenging the optimum yield regulations and

---

**1.** Plaintiff argues that a formal petition would be a useless gesture because the Secretary has already expressed his views on amending the optimum yield. For reasons explained below, this argument is unpersuasive. *See infra* p. 16–17.

because plaintiff has not challenged any other aspect of the 1989 total allowable catch regulations, an accompanying Order will grant defendant's motion to dismiss and dismiss plaintiff's cause of action.