STINSON CANNING CO.,
INC., Plaintiff,

v.

Robert A. MOSBACHER, et
al., Defendants.

Civ. No. 87–0328 B.

United States District Court,
D. Maine.

Feb. 5, 1990.

Raymond A. Pelletier, Jr., Thomas J. VanMeer, A. Mark Horton and J. Gordon Schannell, Jr., Verrill & Dana, Portland, Me., for plaintiff.

Charles R. Shockey, Dept. of Justice, Wildlife & Marine Resources Div., Washington, D.C., for C. William Verity.

Tony P. Geidt, Office of Gen. Counsel, Nat. Oceanic & Atmospheric Admin., Glou-

cester, Mass., and Jay P. McCloskey, Asst. U.S. Atty., Bangor, Me., for Mack & Evans.

## MEMORANDUM AND ORDER ON PENDING MOTIONS

GENE CARTER, Chief Judge.

In this action brought under the Magnuson Fishery Conservation and Management Act, 16 U.S.C. § 1801, *et seq.*, Plaintiff challenges two sections of Defendant's final rule implementing the Fishery Management Plan for the Northeast Multispecies Fisheries.[1] The challenged regulations prohibit the importation of undersized groundfish, and the possession of illegally imported undersized groundfish. In six counts Plaintiff alleges (1) that Defendant exceeded his statutory authority under the Magnuson Act; (2) that the challenged regulations are preempted by the General Agreement on Tariffs and Trade; (3) that the regulations as interpreted are arbitrary and capricious; (4) that there was not a sufficient administrative record to support the regulations; (5) that defendants failed to make a regulatory impact analysis as required under Executive Order 12291; and (6) that Defendants incorrectly certified to the Small Business Administration that the regulations will not have a significant impact on a substantial number of small entities. Defendants have moved to dismiss all counts on various grounds, and they have filed a separate motion for summary judgment on all counts. Plaintiff has filed a cross-motion for summary judgment. In its response to Defendants' Motion to Dismiss, Plaintiff conceded that it was not entitled to recovery on Counts II and V. The Court will, therefore, dismiss those counts.

## MOTION TO DISMISS

The Magnuson Act allows the federal government to regulate fishing by foreign and domestic fishers in the United States' Exclusive Economic Zone. Under the Act, eight regional councils manage the fisheries by formulating long-term fishery management plans. The Secretary of Commerce reviews the plans for compliance both with the standards set forth in the Act and with other law. If he approves a plan, he implements it by promulgating regulations. The Secretary can amend a plan if he approves an amendment proposed by the council or in response to a formal petition for rulemaking. Once the Secretary approves a plan amendment, he implements it through regulations. 16 U.S.C. §§ 1801 *et seq.* Judicial review of regulations promulgated by the Secretary is generally permitted in accordance with the procedures of the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated." 16 U.S.C. § 1855(d).

### A. *Statute of Limitations*

■ Defendants' first asserted ground for dismissal is that Plaintiff's challenge is untimely. The Court disagrees. The regulations challenged were promulgated on September 17, 1987. *See* 52 Fed.Reg. 35096; Ad.Rec. 12. Plaintiff's complaint was filed on October 16, 1987, within the thirty day period. Defendant argues that Plaintiff should have challenged the regulations when they were first published in emergency interim form 1982, *see* 47 Fed. Reg. 13359, Ad.Rec. 3, or at the latest when they were published as an interim rule in 1986. *See* 51 Fed.Reg. 29648, Ad. Rec. 9.

It is true that the prohibitions on the import of undersized groundfish and the possession of undersized, imported groundfish were first promulgated in 1982 and again in 1986 and would have been subject to challenge then. It is also true that the 1987 regulations were designed to amend and extend the interim regulation and did generally extend the prohibitions, making what were termed "technical

---

1. The regulations challenged by Plaintiff originally appeared at 50 C.F.R. § 651.7(b)(7) and (b)(8). In June 1988, as a result of a "housekeeping" amendment, the regulations were moved. Former § 651.7(b) now appears in slightly changed form as § 620.7(a) and subsection (b)(8) appears as § 651.7(6). *See* 53 Fed. Reg. 24644, 24653, 24657.

**34**

changes."[2] However, the interim rule promulgated in 1986 expired *in toto* by its own terms on September 30, 1987. 51 Fed. Reg. 29642. Because the regulation was to expire, repromulgation was necessary even if the Secretary wanted to extend major portions of the interim rule. *Cf. National Food Processors Association v. Klutznick*, 507 F.Supp. 76, 77–78 (1981) (portions of rule which had not expired did not need repromulgation and could not be reviewed). That repromulgation necessitated standard rulemaking procedure with notice, opportunity for comment and ultimately the possibility of judicial review. *See* 5 U.S.C. § 553; 16 U.S.C. § 1855.[3]

### B. *Exhaustion*

▪ Defendants also argue that Plaintiff's claims are barred because it failed to exhaust its administrative remedies. Specifically, Defendants assert that Plaintiff did not present its claims to the Secretary during the public comment period provided in the rulemaking proceeding. The doctrine of exhaustion of administrative remedies functions to prevent disruption of administrative processes by withholding judicial review until an agency has developed relevant facts, applied its expertise and exercised the discretion entrusted to it by law. *Elton Orchards, Inc. v. Brennan*, 508 F.2d 493 (1st Cir.1974). Since those events have already occurred in this case, culminating in final agency action, the exhaustion doctrine plainly does not apply here.

▪ The Court agrees with Plaintiff that Defendants are really seeking to have the Court apply an estoppel based on Plaintiff's failure to comment on the challenged regulations during the comment period. The Court of Appeals for the First Circuit has stated that it agrees with "those courts that have held that a party aggrieved by an agency ruling is not estopped from challenging the validity of an agency standard that it has not objected to at the time of promulgation." *Commonwealth v. Hayes*, 691 F.2d 57, 60 (1st Cir.1982). The Court qualified its position in certain instances in which the aggrieved party had actual notice of the proposed rule. *Id.* This Court sees no reason to apply an estoppel in this case, and the cases cited by Defendants provide no authority for doing so.

### C. *Ripeness*

▪ The Court also finds no merit in Defendants' argument that Plaintiff's challenge to the regulations is not ripe. The Court disagrees. The issues are fit for judicial decision in that they are legal in nature, there is no indication that the agency or the court will benefit from delaying review, and the agency action is final. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Eagle–Picher Industries v. United States Environmental Protection Agency*, 759 F.2d 905, 916–17 (D.C.Cir. 1985). Plainly, Congress intended preenforcement review since it provided that a

---

**2.** Because of its resolution of this issue, the Court need not decide whether the "technical changes" in the import prohibitions constituted a true amendment of the interim plan which would start the running of the statute of limitations anew.

**3.** Even if the challenged rule had not expired, Defendants' statute of limitations argument would be unavailing. The National Oceanic and Atmospheric Administration on June 23, 1987, issued a proposed rule and called for comments. Under settled administrative law doctrine, statute of limitations time periods are reopened when an agency publishes an existing rule in the Federal Register and solicits comments on the rule, even if the agency ultimately decides not to alter the rule. *Montana v. Clark*, 749 F.2d 740, 743–44 (D.C.Cir.1984); *Midwater Trawlers Cooperative v. Mosbacher*, 727 F.Supp.

12, 15 (1989). Defendants argue that the Secretary solicited comments on six specific issues in the proposed FMP, but not on the prohibition on undersized groundfish, and thus that the exception to the statute of limitations does not apply. The Request for Comments stated: "Because the multispecies stocks are in a state of decline, and because reversing the declining trend and rebuilding these stocks is of concern, you are asked to pay particular attention to the following points when commenting on the proposed management measures." 52 Fed.Reg. 23573. The six specific points followed. *Id.* The Court reads the request for comments more broadly than do Defendants. It is plain that the Secretary envisioned general comment on the proposed management measures and wanted comment on the specific points within the context of the more general comments.

petition for such review must be filed thirty days from promulgation. 16 U.S.C. § 1855(d); *Eagle–Picher,* 759 F.2d at 917. Moreover, the Court can foresee hardship similar to that found in *Abbott* if review is not afforded at this time. Either Plaintiff must incur the cost of complying with the regulation as promulgated or it must risk serious civil and criminal penalties. *Abbott,* 387 U.S. at 152–53, 87 S.Ct. at 1517–18.

### D. *Count VI*

Count VI alleges that Defendants incorrectly certified that the regulations will not have a significant economic impact on a substantial number of small entities. The inquiry prompted by this claim into the adequacy of the regulatory flexibility analysis conducted by the agency under the Regulatory Flexibility Act, 5 U.S.C. §§ 601–612, is relevant to a determination of whether an agency's action was arbitrary and capricious and can be reviewed in connection with the Court's substantive review of the regulations. *See Thompson v. Clark,* 741 F.2d 401, 405 (D.C.Cir.1984). Plaintiff has not cited any authority permitting a separate judicial review of the adequacy of the regulatory flexibility analysis, and the statute expressly precludes such direct review. 5 U.S.C. § 611(a); *Thompson v. Clark,* 741 F.2d at 404. Count VI, therefore, will be dismissed.

### MOTION FOR SUMMARY JUDGMENT

■ Plaintiff claims in Count I that by restricting the import of fish caught by foreign fishermen in foreign waters, Defendant has exceeded its statutory jurisdiction under the Magnuson Act. The first question to be addressed is the standard of review to be applied to the specific regulations at issue. Plaintiff argues that the deference traditionally afforded administrative interpretations of statutes is not appropriate here where the issue concerns the limits of the agency's authority, specifically Defendants power to regulate importation. The Court cannot agree.

One of the purposes of the Magnuson Act, as set forth in 16 U.S.C. § 1801(b)(4), is to provide for the preparation and implementation of fishery management plans to achieve and maintain the optimum yield from each fishery. The fishery management plans must be approved by the Secretary and are implemented by the Secretary's promulgation of whatever regulations may be necessary. 16 U.S.C. §§ 1854, 1855. The Act specifically states that the plans must "contain the conservation and management measures, applicable to foreign fishing and fishing by vessels of the United States, which are (A) necessary and appropriate for the conservation and management of the fishery...." 16 U.S.C. § 1853.

The Supreme Court has repeatedly stated that in circumstances like those presented here, a court must defer to an agency's interpretation of the statute it administers:

> 'The power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.' ... If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984); *Schweiker v. Gray Panthers,* 453 U.S. 34, 44, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981).

Plaintiff asserts that the regulations prohibiting importation of undersized fish or possession of imported regulated species are *ultra vires* because the power to regulate foreign commerce and impose import restrictions is vested exclusively in the Congress. Plaintiff cites three cases for the proposition that the executive branch may not regulate imports without an express Congressional delegation of authority to do so. *See United States v. Guy W. Capps, Inc.,* 204 F.2d 655, 658 (4th Cir.

1953); *United States v. Yoshida International, Inc.*, 526 F.2d 560, 574 (C.C.P.A. 1975); *Consumers Union v. Kissinger*, 506 F.2d 136, 142 (D.C.Cir.1974). Although those cases can be cited for the proposition that there must be legislative delegation of the power to regulate imports, it sweeps too broadly to say that these cases *require* that the delegation be express. In *Yoshida*, in fact, the court stated that "the more obvious constitutional questions that would arise if the President had acted in the absence of *any* delegated authority are not present." *Yoshida*, 526 F.2d at 573 n. 18 (emphasis in original). Here, as noted above, there has been a broad delegation of authority to the Secretary and regional councils to take whatever measures are "necessary and appropriate for the conservation and management of the fishery". 16 U.S.C. § 1853(a)(1)(A) and (b)(8).

The Secretary has determined that prohibition of undersized imports is necessary and appropriate for conservation of the fishery, and that determination is entitled to the type of deference detailed in *Chevron* and *Schweiker.* The Act provides for the regulation of foreign fishing, often by the Secretary. 16 U.S.C. §§ 1821–1826. The Act also specifically provides for import prohibitions by the Secretaries of State and the Treasury in certain circumstances. *Id.* § 1825. Congress, therefore, is clearly not averse to regulation of foreign commerce in this area by the Secretary of Commerce and foresaw instances in which import prohibitions would be appropriate. In this context, when the statute entrusts to the Secretary the task of enacting necessary and appropriate conservation measures, it is plain that a prohibition on imports is not manifestly contrary to the statute. *See Chevron*, 467 U.S. at 845, 104 S.Ct. at 2783.

Moreover, the import regulations address a perceived problem in a rational way. The Administrative Record demonstrates that the issue of prohibiting possession of undersized imports was specifically addressed by the Secretary who determined that such a prohibition aids enforcement by "eliminat[ing] the necessity of burdensome and expensive at-sea enforcement because au-thorized enforcement officers will not have the burden of proving where undersized groundfish were taken." The Secretary specifically balanced the conservation benefits of the prohibition against the impacts on those affected by it and determined that the measure was warranted. Ad.Rec. 2; 47 Fed.Reg. 10606. The agency reconsidered the issue when it was raised by the Canadian government in a Comment to the proposed regulation in 1982. In its Response the Council stated that the size restriction was "essential," that any exception to the prohibition on possession of undersized fish would seriously weaken the enforcement of the conservation measures, and that the potential impact on international trade had been seriously considered. Ad.Rec. 4; 47 Fed.Reg. 43706. The fact that the Secretary might have chosen other means, like those suggested by Plaintiff, for dealing with the perceived enforcement problem does not make the regulation that was chosen arbitrary and capricious. The Court finds, therefore, that the challenged regulations are not *ultra vires.*

■ Plaintiff also argues that the Secretary's interpretation of the regulation to prohibit the importation of undersized fish regardless of where they were caught is inconsistent with the regulation and therefore arbitrary and capricious. In reviewing an agency's interpretation of its own regulation, "[o]rdinarily the agency's interpretation will carry the day unless it is determined to be clearly erroneous or inconsistent with the statutory plan." *Commonwealth of Massachusetts Department of Education v. United States Department of Education*, 837 F.2d 536, 541 (1st Cir. 1988).

The challenged regulations generally prohibit the importation of "regulated species," which are defined as "a subset of multispecies finfish which includes Atlantic cod, witch flounder, American plaice, yellowtail flounder, haddock, pollock, winter flounder, and redfish." Multispecies finfish, in turn, "includes, but is not limited to, the following finfish in the Northeast portion of the Atlantic Ocean EEZ," and a longer list of fish follows. Plaintiff ar-

gues, therefore, that the import prohibition can only apply to fish that were taken in the EEZ.

The definition of multispecies finfish, however, is not explicit as to whether it refers to fish taken in the EEZ or to fish most often found in the EEZ. The language "includes, but is not limited to," makes the regulation specifically non-limiting. Therefore, the limitation Plaintiff seeks to impose on the import prohibition, while arguable, is not convincing. Moreover, Plaintiff's asserted limitation does not fully comport with a reasonable definition of import. Fish taken in the EEZ is from the United States, so the import ban would apply to a domestic product. Usually the term import refers to products with a foreign source. Moreover, Plaintiff's interpretation would significantly undermine the regulatory scheme, making enforcement far more difficult.

On the other hand, the Secretary's application of the import prohibition to undersized fish wherever caught is consistent with the national standard established in section 1851(a)(3) of the statute. That standard provides: "To the extent practicable, an individual stock of fish shall be managed as a unit throughout its range...." Moreover, the Secretary's interpretation makes regulatory sense, allowing the purposes of the Act to be carried out without necessitating in every case difficult determinations of where individual fish were caught. The Secretary's interpretation of the regulation, therefore, is not clearly erroneous.

Plaintiff also argues that the regulations are arbitrary and capricious because Defendants failed to analyze the relevant factors affecting their decision before promulgating the regulations. The factors to which Plaintiff refers, including the provision of seafood at reasonable prices, satisfaction of consumer needs, encouragement of domestic markets, and the economies of coastal areas, are found in 50 C.F.R. Part 602, which sets forth guidelines for fishery management plans. The Act called for establishment of such advisory guidelines, based on the national standards set forth in

16 U.S.C. § 1851(a), to assist in the development of fishery management plans. 16 U.S.C. § 1851(b). The Act states explicitly, however, that the guidelines shall not have the force and effect of law. *Id.* Failure of Defendants specifically to address each of the factors is not, therefore, a violation of law.

Also, as Defendants point out, the administrative record demonstrates that the national standards set forth in the Act, consumer costs, and employment effects on communities were specifically considered. Ad.Rec. 5(b), Part 3, at 13, 18–22; Ad.Rec. 10, at 22, 27, 29–32. Therefore, based on its reading of the administrative record, the Court cannot say that Defendant failed to consider the factors relevant to its decision. *See Motor Vehicle Manufacturers' Association v. State Farm Mutual,* 463 U.S. 29, 42–43, 103 S.Ct. 2856, 2866–67, 77 L.Ed.2d 443 (1983).

The Court has previously granted Defendants' motion to dismiss Count VI which sought review of the Regulatory Flexibility Analysis performed by Defendants before promulgation of the regulations. Plaintiff now argues that the promulgation of the regulations was arbitrary and capricious because the Regulatory Flexibility Analysis failed to analyze the impact of the import prohibition on fish processors. The court in *Thompson v. Clark,* 741 F.2d at 405, stated the manner in which the Court may use the regulatory flexibility analysis:

[I]f data in the regulatory flexibility analysis—or data anywhere else in the rulemaking—demonstrates that the rule constitutes such an unreasonable assessment of social costs and benefits as to be arbitrary and capricious, 5 U.S.C. § 706(2)(A), the rule cannot stand.... [I]f a defective regulatory flexibility analysis caused an agency to underestimate the harm inflicted upon small business to such a degree that, when adjustment is made for the error, the harm clearly outweighs the claimed benefits of the rule, then the rule must be set aside. It is set aside, however, *not* because the regulatory flexibility analysis was defective, but because the mistaken premise

reflected in the regulatory flexibility analysis deprives the rule of its required rational support....

*Id.*

The administrative record here plainly demonstrates that fish processors were considered when the agency conducted its Regulatory Flexibility Analysis for the 1986 Interim Rule, *see* Ad.Rec. 5, Part 3, at 20 (discussing employment impacts), 21, and 18 (noting that after a number of years participants up the production chain will enjoy increased product flow), and that the same considerations were incorporated into Amendment 1, the regulations for which were proposed in June, 1987 and promulgated in September, 1987. *See* Ad.Rec. 10, at 26, 27, 28. Based on its review of the record, the Court cannot say that the regulations do not have rational support because of a failure adequately to consider the impact of the import prohibition on processors in the Regulatory Flexibility Analysis. The Court also rejects Plaintiff's challenge to the regulations on the ground that the administrative record, without more discussion and analysis of the rule's impact on processors, is insufficient to support the agency's decision.

Accordingly, it is ORDERED that Defendants' Motion to Dismiss Counts II, V, and VI is hereby GRANTED and those counts are hereby DISMISSED. Defendants' Motion for Summary Judgment on Counts I, III, and IV is hereby GRANTED and Plaintiff's Cross-Motion for Summary Judgment is hereby DENIED.

SO ORDERED.