**F/V ROBERT MICHAEL, INC., F/V Tara Lynn, Inc., and F/V Tara Lynn II, Inc., Plaintiffs,**

v.

**Michael KANTOR, Secretary, United States Department of Commerce, Defendant.**

Civil No. 96–220–P–C.

United States District Court, D. Maine.

April 3, 1997.

---

Nicholas H. Walsh, Chute & Associates, Portland, for Plaintiffs.

Charles W. Brooks, Lyn Jacobs, U.S. Department of Justice, Environmental & Natural Resources Division, Washington, DC, for Defendant.

*MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT*

GENE CARTER, District Judge.

Plaintiffs, three Maine corporations, appeal from the denial of their applications for federal limited access lobster permits by the Defendant, the United States Department of Commerce. Now before the Court for decision are Plaintiffs' and Defendant's cross-motions for summary judgment (Docket Nos. 8 and 5, respectively). For the reasons stated below, the Court will grant Defendant's motion, and, accordingly, will deny Plaintiffs' motion.

## I. FACTS

The facts material to this case are not in dispute. Plaintiffs are three Maine corporations, each of which owns a commercial fishing vessel. Administrative Record (hereafter "Ad. Rec.") at 29–36, 58. The sole director and sole shareholder of each corporation is Mr. Robert Tetrault. Ad. Rec. at 58. Tetrault owns the three vessels—the TARA LYNN, the ROBERT MICHAEL, and the TARA LYNN II—which fish for groundfish and northern shrimp. *Id.* Each vessel operates almost exclusively out of Maine ports and has held a Maine commercial fishing permit since it began operating. Ad. Rec. at 29, 32, 35, 42. Plaintiffs allege that in 1994, and for a number of years prior to 1994, the three boats held federal permits, enabling them to participate in the lobster fishery. Ad. Rec. at 51.

In October 1995, Tetrault applied to the National Marine Fisheries Service of the U.S. Department of Commerce (hereafter "NMFS") for limited access federal lobster permits. Ad. Rec. at 28–36. In 1995 an applicant whose vessel had previously held a federal lobster permit could meet the necessary criteria for entry into the lobster fishery by demonstrating that the vessel had "landed American lobster prior to March 25, 1991, while in possession of the lobster permit." *See* 50 C.F.R. § 649.4(b)(1)(i)(A) (1996). NMFS denied Tetrault's applications on the

ground that he had failed to produce evidence of lobster landings before March 25, 1991 (hereafter the "control date"). Ad. Rec. at 38–40.

In December 1995, Tetrault appealed the decision to the NMFS Lobster Appeals Officer, asserting that he was "prevented by circumstances beyond his[ ] control from meeting [the] relevant criteria" for eligibility. Ad. Rec. at 50–75; *see* 50 C.F.R. § 649.4(b)(5)(i)(B). Specifically, Tetrault cited two circumstances which, he claimed, precluded him from demonstrating pre-control date landings of lobster. First, he pointed out that one of his vessels, the TARA LYNN, had in fact landed lobsters in Massachusetts before the control date, but the records documenting those landings were destroyed in 1993 when a pipe burst in Tetrault's home, causing extensive water damage. Ad. Rec. at 52–53, 58. Second, Tetrault maintained that neither the TARA LYNN II nor the ROBERT MICHAEL was able to demonstrate landings of lobster before the control date because Maine law prohibits the possession of lobster by a Maine-licensed dragger.[1] Ad. Rec. at 52. Tetrault asserted that both the TARA LYNN II and the ROBERT MICHAEL took lobsters as a by-catch and returned them to the sea and, in the absence of the Maine law forbidding possession of lobsters on a dragger, would have sold them. Ad. Rec. at 54.

On April 15, 1996, the Lobster Appeals Officer affirmed the denial of the permits, concluding that the information Tetrault had provided was not sufficient for the Officer to determine that his vessels qualified for the permits. Ad. Rec. at 76–78. On April 17, Tetrault appealed to NMFS Regional Director Andrew Rosenberg, requesting a hearing. Ad. Rec. at 79–83. On May 22, Regional Counsel Joel MacDonald conducted an administrative hearing on the matter. *See* Transcript of Administrative Hearing.

On May 31, 1996, MacDonald issued a memorandum recommending that NMFS grant the permits. Ad. Rec. at 85–86. He based this recommendation upon his belief that "the Maine law prohibiting the possession of lobsters on vessels with trawl gear was a circumstance beyond Mr. Tetreault's [sic] control that prevented his vessels from qualifying for a Federal limited access permit." Ad. Rec. at 86. MacDonald also concurred with Tetrault's assertion that the unforseen destruction of documents constituted a "circumstance beyond his control." *Id.* Indeed, MacDonald noted that "[b]ut for the Maine law, all three of Mr. Tetreault's [sic] vessels would have easily qualified for a Federal limited access permit." Ad. Rec. at 86.

Upon reviewing MacDonald's memorandum, Rosenberg initialed the memo, indicating that he wished to discuss the recommendation with MacDonald. *Id.* Rosenberg asked MacDonald to reexamine the record in light of Rosenberg's concern that public policy militated in favor of denying the permits. Ad. Rec. at 87.

Upon reconsideration, MacDonald changed his position, and on June 7, 1996, he issued a second memorandum, recommending that NMFS deny the permits. Ad. Rec. at 87–90. MacDonald reasoned that

> [t]he regulations cannot reasonably contemplate that a duly enacted law of a coastal state falls within the scope of circumstances beyond one's control envisioned by the framers of the appeal provision in the lobster regulations. To conclude otherwise would be contrary to the canons of construction to which our laws are subject; it does not comport with sound public policy.

Ad. Rec. at 89. Additionally, MacDonald rejected Tetrault's argument that the TARA LYNN was qualified for a permit, noting that

> the records ... had they been available, were those of landings of lobsters in New Hampshire and Massachusetts in violation

---

1. Under Maine law, it is "unlawful to fish for or take lobsters by use of an otter or beam trawl, a scallop drag or trawl, seine or net or to have in possession any lobsters, regardless of their source, on board any boat rigged for otter or beam trawling, scallop dragging or trawling, seining or netting." 12 M.R.S.A. § 6952 (West 1994). Tetrault was prosecuted for violating section 6952 in 1990, when Maine Marine Patrol detected lobster aboard the TARA LYNN II. Ad. Rec. at 54. After receiving a fine for the violation, Tetrault issued a company policy forbidding his boats from possessing or landing lobster thereafter. Ad. Rec. at 42, 86.

of Maine's law. It would effect a strange result indeed if an illegal act could be the basis for meeting one of the criteria for qualifying for a [federal permit]. Such a result is also inconsistent with a reasonable interpretation of the regulations and sound public policy.

Ad. Rec. at 89.

On June 7, 1996, Rosenberg wrote Tetrault a letter, denying the appeal. Ad. Rec. at 91–92. Rosenberg explained that to construe a valid Maine law as a circumstance beyond an applicant's control, and to accept records of unlawful lobster landings, even if such records were available, would be contrary to public policy. Ad. Rec. at 91. Rosenberg also rejected Tetrault's argument that the qualifying criteria for a federal permit violate National Standard 4 of the Magnuson Act, which forbids the promulgation of regulations or management measures that discriminate between residents of different states. See 16 U.S.C. § 1851(a)(4) (West 1985). Rosenberg concluded that it was Tetrault's own decision to employ his vessels as draggers, rather than his residence in Maine, that prevented him from qualifying for a federal permit. Ad. Rec. at 90. Rosenberg's denial of the permits represents the final decision of the Department of Commerce, and it is from this decision that Plaintiffs now appeal.

## II. STANDARD OF REVIEW

The standard for judicial review of an agency's action is a deferential one. In reviewing a decision by the Department of Commerce, pursuant to the Magnuson Fishery Conservation and Management Act, set forth at 16 U.S.C. § 1801 et seq., this Court must "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law." See 5 U.S.C.A. § 706(2)(A) (West 1996).

The United States Supreme Court has stated that a court's task in reviewing an agency decision under the "arbitrary and capricious" standard is to " 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' " Marsh v.

Oregon Natural Resources Council, 490 U.S. 360, 378, 109 S.Ct. 1851, 1861, 104 L.Ed.2d 377 (1989) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971)). The Court of Appeals for the First Circuit has acknowledged that, in reviewing an exercise of discretion by the Secretary of Commerce, the court's role is a narrow one: "A reviewing court may decide only whether this discretion was exercised rationally and consistently with the standards set by Congress . . . and may not substitute its own judgment as to values and priorities for that of the Secretary." Maine v. Kreps, 563 F.2d 1052, 1055 (1st Cir.1977).

In this context, the phrase "arbitrary and capricious" has been interpreted to mean any agency action where the agency "relies on factors that Congress did not intend for it to consider, entirely ignores important aspects of the problem, explains its decision in a manner contrary to the evidence before it, or reaches a decision that is so implausible that it cannot be ascribed to a difference in view." United States v. F/V Alice Amanda, 987 F.2d 1078, 1085 (4th Cir.1993) (citing Bedford County Mem. Hosp. v. Health & Hum. Services, 769 F.2d 1017, 1022 (4th Cir.1985)). This Court has noted that, "[i]n reviewing an agency's interpretation of its own regulation, '[o]rdinarily the agency's interpretation will carry the day unless it is determined to be clearly erroneous or inconsistent with the statutory plan.' " Stinson Canning Co., Inc. v. Mosbacher, 731 F.Supp. 32, 36 (D.Me.1990) (quoting Comm. of Mass., Dep't of Educ. v. United States Dep't of Educ., 837 F.2d 536, 541 (1st Cir.1988)).

## III. DISCUSSION

■ Plaintiffs seek reversal of Defendant's denial of Plaintiffs' lobster permits on the grounds that the decision was arbitrary and capricious, an abuse of discretion and otherwise not in accordance with law. Defendant maintains that the decision by the NMFS was reasonable and should be affirmed. The Court, having carefully reviewed the administrative record, along with the transcript of a hearing held before an NMFS officer and the briefs submitted by the parties, agrees with

**15**

the Defendant. It was neither arbitrary nor capricious—and indeed it was reasonable—for the NMFS to conclude that Tetrault's vessels' compliance with a valid state law in Maine[2] did not constitute a "circumstance beyond [his] control," and did not entitle the vessels to an exception from the statutory requirement that they demonstrate proof of lobster landings before March 25, 1991.

Plaintiffs contend that but for the Maine law, the vessels could have proven legal landings of lobster before the control date, and, therefore, would have been eligible for federal limited access lobster permits. Defendant asserts that sound public policy reasons prevent Defendant from concluding that Plaintiffs' business decision to devote all three vessels to dragging, and. Plaintiffs' compliance with a valid state law, entitle Plaintiffs to an exception from the permit eligibility requirements which Plaintiffs have not fully met. The Court is satisfied that the agency based its decision upon relevant factors and acted rationally in denying the permits.

■ Plaintiffs also challenge Defendant's action on the ground that the NMFS's denial of the permits violates National Standard 4 of the Magnuson Act, which states that "[c]onservation and management measures shall not discriminate between residents of different States." 16 U.S.C.A. § 1851(a)(4) (West 1985). Plaintiffs argue that the permit denial discriminates against the three vessels because, as Maine-based draggers, they are disadvantaged in attempting to meet the qualifying criteria, in comparison with residents of states where draggers are not prohibited from possessing lobster. Defendant responds that Standard 4 does not apply here, insofar as it addresses the adoption of fishery management plans and regulations, and was not intended to reach agency actions such as permit denials. Moreover, Defendant argues, if Plaintiffs' challenge is to the underlying regulation, 50 C.F.R. § 649.4(b)(1)(i)(A), which requires proof of pre-control-date lobster landings, the challenge is time-barred since Plaintiffs Complaint was filed in July of 1996, well beyond

thirty days after the regulation was published on June 21, 1994. See Kramer v. Mosbacher, 878 F.2d 134, 137 (4th Cir.1989); see also 59 Fed.Reg. 31943.

The Court need not reach the issue of whether Standard 4 applies to agency actions such as permit denials since the Court is persuaded that Plaintiffs' quarrel lies with the regulation itself, not with the agency's subsequent actions interpreting the regulation. Plaintiffs brought this action in an attempt to take advantage of a statutory exception for applicants who are prevented, by "circumstances beyond [their] control," from meeting the qualifying criteria for a permit. See 50 C.F.R. § 649.4(b)(5)(i)(A) (1996). However, the actual barrier to obtaining the permits was not the agency's interpretation of that statutory language but, rather, the underlying regulation which required Plaintiffs to produce evidence of pre-control date lobster landings. Plaintiffs' fundamental objection is that the lack of adequate notice to draggermen complying with Maine's prohibition on lobster possession deprived the Plaintiffs of a meaningful opportunity to choose whether or not to designate, temporarily or permanently, one or more vessels to the lobster fishery in order to prove lobster landings before the control date.

■ The Court notes that regulations which have some discriminatory impact do not automatically violate Standard 4. Alaska Factory Trawler Ass'n v. Baldridge, 831 F.2d 1456, 1460 (9th Cir.1987). In any event, the Court does not reach the issue of whether 50 C.F.R. § 649.4(b)(1)(i)(A) is discriminatory since, as Defendant points out, Plaintiffs failed to challenge the regulation within the thirty-day statute of limitations.

Plaintiffs' position remains a sympathetic one, and there are, no doubt, other vessels similarly situated. However, this Court is not in a position to substitute its own judgment for that of the Department of Commerce, and the Court is satisfied that the Defendant acted in a reasonable manner in denying the permits.

2. It is important to note that in State v. Hayes, 603 A.2d 869 (Me.1992), the Supreme Judicial Court of Maine held that the Magnuson Act does not preempt 12 M.R.S.A. § 6952, Maine's regulation forbidding the possession of lobsters aboard Maine-registered draggers.

## IV. CONCLUSION

Accordingly, it is *ORDERED* that Defendant's Motion for Summary Judgment be, and it is hereby, *GRANTED*, and Plaintiffs' Motion for Summary Judgment be, and it is hereby, *DENIED*.